71467. ALEXANDER UNDERWRITERS GENERAL AGENCY, INC. et al. v. LOVETT et al.
(339 SE2d 368)

BANKE, Chief Judge.

This is a suit against an insurance company and its general agent to recover damages based on the failure of the insurance company either to pay or defend a claim allegedly covered by one of its policies. The appeal is from an order granting partial summary judgment to the plaintiffs on the issue of liability and denying motions for summary judgment filed by the defendants.

The insurer is International Indemnity Company, and the general agent is Alexander Underwriters General Agency, Inc. Prior to July 25, 1980, Wilmith B. Craig, d/b/a Craig Insurance Agency, was authorized by Alexander to act as one of its sales agents. According to Alexander, this meant that if Craig mailed Alexander an application for automobile insurance coverage which met all of Alexander's underwriting rules, accompanied by a check for the correct amount of the premium, the coverage would be considered bound by International Indemnity as of the postmark date.

Acting through Craig, Curtis Lovett, one of the two plaintiffs herein, obtained an International Indemnity automobile accident insurance policy covering a 1969 Buick, effective January 8, 1980 to January 8, 1981. Stamped on the face of the policy was the following notice: "IN THE EVENT OF AN ACCIDENT NOTIFY YOUR AGENT OR ALEXANDER UNDERWRITERS, INC."

On July 25, 1980, while the above policy was in effect, Alexander notified Craig Insurance Agency, but not Lovett, that Craig's authority to bind coverage was revoked and that no further new or renewal business would be accepted from it. Nevertheless, on September 24, 1980, Alexander complied with a request submitted by Craig for the issuance of a policy endorsement adding a 1974 Ford LTD to Lovett's coverage. On appeal, Alexander asserts that it sent Lovett a letter on September 30, 1980, instructing him to remit an additional premium

for this endorsement in the amount of $131 within 12 days, and informing him that the entire policy would otherwise be cancelled. We have not, however, been cited to a copy of this letter in the record.

Although Lovett contends that he paid the additional $131 premium to Craig, it is undisputed that Craig never sent the money to Alexander. On October 20, 1980, Alexander mailed Lovett a notice that the policy would be cancelled on November 1, 1980, due to "nonpayment of additional premium." On November 21, 1980, Alexander credited Craig's brokerage account with $117, which according to Alexander, was the amount of the unearned policy premium to which Lovett was entitled as of the purported November 1st cancellation date. It does not appear that Craig ever remitted any portion of this refund to Lovett.

On January 5, 1981, Lovett was issued a receipt by Craig for $212 as "Down payment on Auto Ins., '69 Buick & '74 LTD." In addition, Lovett was issued a new International Indemnity Company insurance card by Craig, bearing an effective date of January 8, 1981. However, Craig did not remit any portion of the $212 to Alexander, nor was any renewal policy in fact issued by International.

On May 2, 1981, Curtis Lovett's brother, Ronald, was involved in an accident while driving Curtis' 1969 Buick, resulting in the death of one Michael Collins. Collins' son, Alvin, subsequently brought a wrongful death action against the Lovetts. On June 10, 1981, Ronald Lovett delivered his service copy of this suit to Craig, who advised him that "the insurance company would handle everything." However, Craig never forwarded the complaint and summons to the defendants, nor were the defendants otherwise provided with timely notice of the pendency of the action. The suit consequently went into default. The issue of damages was subsequently tried before a jury, resulting in a verdict and judgment against the Lovetts in the amount of $415,377, plus interest and costs. The Lovetts initiated the present action against the defendants to recover the amount of this judgment, plus property damage in the amount of $5,000 and punitive damages in the amount of $2,000,000. The wrongful death plaintiff, Collins, moved for and was granted permission to intervene in this action as a party plaintiff.

As previously indicated, the case is presently before us on appeal from an order granting summary judgment to the plaintiffs on the issue of the existence *vel non* of coverage and denying summary judgment to the defendants on the issue of whether they may be held liable for damages over and above the $10,000 policy limits, based on their failure to defend the wrongful death action. *Held*:

1. On the basis of the undisputed evidence of record, the trial court properly concluded that the attempted cancellation of the policy was ineffective due to the defendants' failure to refund Lovett the

unearned premium on his policy within 15 days of the cancellation notice, as required by OCGA § 33-24-44 (c).

At all times applicable to this litigation, OCGA § 33-24-44 provided, in pertinent part, as follows: "(a) Except as otherwise provided in this chapter, cancellation of a policy which by its terms and conditions may be cancelled by the insurer shall be accomplished as prescribed in this Code section. (b) Written notice stating the time when the cancellation will be effective, which shall be given not less than 30 days from the date of cancellation . . . , shall be delivered in person or by depositing the notice in the United States mails . . . (c) The notice may or may not be accompanied by a tender of the unearned premium paid by the insured calculated on a pro rata basis. *If tender is not made simultaneously with the notice, it shall be made within 15 days of notice of cancellation . . .*" (Emphasis supplied.)

We reject the defendants' contention that this code section, which applies by its terms to insurance policies generally, was not made applicable to automobile policies until 1984, when subsection (e) of OCGA § 33-24-45, governing the cancellation or nonrenewal of automobile policies specifically, was amended to provide that "[r]eturn of unearned premium, if any, due to cancellation as to which this Code section applies shall be processed in accordance with Code Section 33-24-44." Ga. L. 1984, p. 1355. The version of OCGA § 33-24-45 which existed prior to the 1984 amendment contained no language contrary to or inconsistent with the return of unearned premium requirement set forth in § 33-24-44 (c), supra,[1] and prior to enactment of the 1984 amendment, this court had consistently held that § 33-24-44 (c) was applicable to automobile policies. See *Ga. Mut. Ins. Co. v. Fraser*, 152 Ga. App. 866 (264 SE2d 315) (1980); *Balboa Ins. Co. v. Hunter*, 165 Ga. App. 273 (299 SE2d 91) (1983). Thus, we hold that the trial court was correct in determining the return-of-unearned-premium requirement to be applicable in the present case.

The defendants' further contend that, even if they were required to comply with the return-of-unearned-premium requirements set forth in OCGA § 33-24-44 (c), Alexander did so by crediting $117 to Craig's brokerage on November 20, 1980. This contention is without merit, for two reasons. In the first place, the credit was not made within 15 days of the October 20th cancellation notice, as required by the then existing version of OCGA § 33-24-44 (c).[2] In the second

---

[1] The prior version of OCGA § 33-24-45 did, however, contain its own provisions respecting the timeliness and contents of the cancellation notice itself, which provisions were eliminated by the 1984 amendment and replaced with the following language: "No notice of cancellation of a policy to which this Code section applies shall be effective unless mailed or delivered as prescribed in Code Section § 33-24-44." Ga. L. 1984, p. 1354. (OCGA § 33-24-45 (d)).

[2] That code section, which was also amended in 1984, now requires that the return of the

place, the contention is inconsistent with the defendants' position that Craig's authority to act on their behalf was terminated in July of 1980.

2. There having been no valid cancellation of the policy, and it being undisputed that no notice of nonrenewal was mailed or delivered to Lovett within 30 days of the January 8, 1981, policy expiration date, as required by OCGA § 33-24-45 (c), it follows that the policy must be deemed to have been renewed automatically for an additional one-year period on that date. See *Wisener v. American Southern Ins. Co.*, 150 Ga. App. 795 (258 SE2d 908) (1979). Furthermore, the evidence shows without dispute that Lovett paid Craig a $212 down payment for a new policy on January 5, 1981, in return for which he was issued a new International Indemnity insurance card. Although the appellants argue strenuously that Craig's authority to bind coverage had long since been revoked as of that date, the record contains no evidence to suggest that Lovett was ever notified of this revocation of authority. Rather, the undisputed evidence of record indicates that, insofar as Lovett was concerned, Craig Insurance Agency continued to have the same authority to bind coverage that it had exercised properly the year before. "[A]n estoppel arises as against the denial of agency when a principal places a purported agent in a position of apparent authority so that a person of ordinary prudence conversant with 'business usages and the nature of the particular business is justified in assuming that such agent has the authority to perform a particular act and deals with the agent upon that assumption. (Cits.)" *Intl. Indem. Co. v. Odom*, 174 Ga. App. 6, 7 (329 SE2d 307) (1985). Accord *Howard v. Moore Group*, 168 Ga. App. 811 (3) (310 SE2d 564) (1983).

The defendant's reliance on this court's decision in *Nat. Property Owners Ins. Co. v. Wells*, 166 Ga. App. 281 (2) (304 SE2d 458) (1983), is misplaced. There, the only evidence regarding the existence of an agency relationship consisted of the insurer's affidavit to the effect that the agent had no authority to contract on its behalf. In the present case, the undisputed evidence shows that, at least until July of 1980, Craig did have such authority. Not only has there been no showing that the purported revocation of that authority was communicated to the insured prior to the renewal date, it appears without dispute that as late as November 20, 1980, when Alexander credited the amount of Lovett's unearned premium to Craig's brokerage account, the defendants were still purporting to do business with him through Craig. As previously indicated, we view the simultaneous as-

---

unearned premium be made on or before the cancellation date and also provides, for the first time, for effecting the return through the insured's agent of record. Ga. L. 1984, pp. 1345, 1348, § 4.

sertion of these two positions by the defendants, i.e., that they were entitled to do business with Lovett through Craig but that Lovett was not entitled to do business with them through Craig, to be fundamentally inconsistent. On the basis of those portions of the transcript transmitted to this court in support of the appeal, we hold that the trial court did not err in concluding as a matter of law that Lovett's policy was in full force and effect on the date of the accident.

3. Based on the absence of any evidence to indicate that Lovett was notified of Alexander's purported revocation of Craig's authority to act as its agent, we further hold that Ronald Lovett's notification to Craig of the pendency of the Collins' suit constituted notification to the defendants of the pendency of the suit. Accord *Intl. Indem. Co. v. Odom*, supra. It follows that the trial court did not err in ruling that International's liability for payment of benefits up to the $10,000 policy limits had been established as a matter of law.

4. The trial court was also correct in concluding that a jury issue existed with respect to whether and to what extent the defendants could be held liable for damages over and above the $10,000 policy limits, based on their failure to defend or adjust the claim against the Lovetts. The record contains evidence that, on February 27, 1984, which was after the wrongful death action against the Lovetts had gone into default but apparently before the trial on damages, Collins' attorney wrote International Indemnity offering to settle for the $10,000 policy limits. The defendants ignored this offer, choosing to rely on their position that the policy had been cancelled. "A proper and safe course of action for an insurer in this position is to enter upon a defense under a reservation of rights and then proceed to seek a declaratory judgment in its favor. (Cits.)" *Richmond v. Ga. Farm Bur. Mut. Ins. Co.*, 140 Ga. App. 215, 217 (231 SE2d 245) (1976). "[W]here a person injured by the insured offers to settle for a sum within the policy limits, and the insurer refuses the offer of settlement, the insurer may be liable to the insured to pay the verdict rendered against the insured even though the verdict exceeds the policy limit of liability." *McCall v. Allstate Ins. Co.*, 251 Ga. 869, 870 (1) (310 SE2d 513) (1984).

*Judgment affirmed. McMurray, P. J., and Benham, J., concur.*

DECIDED DECEMBER 5, 1985 —
REHEARING DENIED DECEMBER 18, 1985 —

*Fred S. Clark*, for appellants.
*Clarence L. Martin, Robert E. Robinson*, for appellees.