A94A0399. KIRBY et al. v. NORTHWESTERN NATIONAL CASUALTY COMPANY.
A94A0400. NORTHSIDE EQUITIES, INC. v. NORTHWESTERN NATIONAL CASUALTY COMPANY.
(445 SE2d 791)

ANDREWS, Judge.

This appeal involves a declaratory judgment action which arose from an automobile accident which occurred on May 24, 1991. The

accident occurred when Clinton Hunter drove north in the southbound lane of Interstate 75 and collided with a vehicle driven by Michael Kirby, who was accompanied by his wife and children. Kirby was killed in the accident. At the time of the accident, Hunter's blood-alcohol content was above the legal limit.

Kirby's widow, Angela Kirby, filed suit against Northside Equities, Inc. d/b/a Ponytails on behalf of herself, and as guardian for her three minor children, for the wrongful death of Kirby and for personal injuries she and her children sustained. Mrs. Kirby claimed that Hunter spent the afternoon of the accident at Ponytails, an adult entertainment establishment, where he had become intoxicated. She alleged that the employees of Ponytails provided alcoholic beverages to Hunter when he was in a noticeable state of intoxication and that they should have known that he was going to leave Ponytails and drive on public roads. She alleged that the alcohol provided by Ponytails was the proximate cause of her husband's death and of the injuries she and her three children received.

On March 11, 1992, Northwestern National Casualty Company filed a declaratory judgment action against the parties to the personal injury suit. In the action, Northwestern National sought a determination of its duty to defend and indemnify Ponytails under its insurance policy. Franklin Equities d/b/a Ponytails Lounge was later added to the case as a defendant.

The comprehensive general liability policy which Northwestern National issued Ponytails for the period in question contained the following language:

"**Exclusions**

"This insurance does not apply to:

"C. 'Bodily injury' or 'property damage' for which any insured may be held liable by reason of:

"(1) Causing or contributing to the intoxication of any person;

"(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

"(3) Any statute, ordinance or regulations relating to the sale, gift, distribution or use of alcoholic beverages.

"This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages."

On September 4, 1992, Northwestern National filed a motion for summary judgment arguing that the above exclusion excluded the allegations of Kirby's complaint from coverage. Attached to Northwestern National's motion was a document from the Georgia Insurance Commissioner, which certified the commercial general liability coverage on file with the Georgia Insurance Department. That document contains an explanation, dated May 1985, of the changes in the gen-

eral liability coverage after that year, which stated:

"Exclusions. There are no marked differences from the current Bodily Injury and Property Damage Exclusions except as specified below. . . .

"3. Exclusion c. is the alcoholic beverage exclusion. *It is essentially the same as in the current contract except it affords previously excluded coverage to the owner or lessor of premises used in an alcoholic beverages business.*"

Northside Equities responded to Northwestern National's motion, claiming that several factual issues remained in the case. Attached to its response was the affidavit of Doug Lambert, secretary of Northside Equities, who avowed that he understood that the insurance coverage being written for Ponytails included liquor liability. Attached to his affidavit was the insurance proposal from James Mascho of Poe & Associates, which Lambert contended included liquor liability insurance. The proposal shows that although the proposal included coverage for "host liquor liability," it specifically *excluded* liquor liability from the umbrella coverage.

Included with Northside Equities' amended response to the motion was the affidavit of James Mascho of Poe & Associates. He stated that he negotiated the insurance package with Lambert with the intent to include liquor liability coverage as part of the total liability package for Ponytails. He stated that Poe & Associates was a Northwestern National agency and that if the policy contained exclusionary language regarding alcoholic beverages, it was in error.

On January 26, 1993, the trial court denied the motion for summary judgment, but then vacated that order. Additional briefs were then filed, the motion was orally argued and on July 15, 1993, the trial court granted the motion. In Case No. A94A0399, Kirby, individually and as the guardian for her minor children appeals; in Case No. A94A0400, Northside Equities appeals. The appeals will be addressed jointly.

1. In her first enumeration of error, Kirby argues that the trial court erred in granting summary judgment since the liquor liability exclusion is contrary to public policy. Kirby contends that most of the proceeds of Ponytails' business were from alcohol sales and that public policy prohibits such an exclusion.

This contention was resolved adversely to Kirby in *Safeco Ins. Co. of America v. Shawnee Mech. Contractors*, 209 Ga. App. 165 (433 SE2d 66) (1993) and *Hartford Ins. Co. &c. v. Franklin*, 206 Ga. App. 193 (424 SE2d 803) (1992). The businesses in both *Safeco*, supra, and in *Hartford*, supra, sold alcohol and, contrary to Kirby's argument here, the court determined that an alcohol exclusion was valid. "Although the General Assembly has imposed liability for the service of alcohol to a noticeably intoxicated person who then injures another as

a result of the intoxication [OCGA § 51-1-40], no law or policy of this State requires *insurance coverage* for such a liability." *Hartford*, supra at 195. This enumeration is without merit.

2. Both Kirby and Northside Equities enumerate as error the trial court's determination that Ponytails did not purchase liquor liability insurance. They contend that Poe & Associates was an agent of Northwestern National and that Mascho intended to sell liquor liability coverage. They argue that an agency relationship may arise by implication as well as by express authority, and that agency may be proved by circumstantial evidence. See generally OCGA § 10-6-1. Accordingly, they argue that Mascho was a Northwestern National agent and that the policy issued evidenced a mutual mistake of fact.

In support of this argument, appellants rely upon Mascho's affidavit in which he asserted that he was a Northwestern National agent and that he intended to include liquor liability coverage as part of the total liability package. Kirby and Northside Equities cite several other factors they deem significant to this determination. They argue that Poe & Associates were the soliciting agents for the policy sold; that Mascho and Poe & Associates prepared and issued binders on Northwestern National policies, which were also signed by employees of Poe; that in this case Mascho signed the binder issued under Northwestern National's name; that the general managing agent of Northwestern National had authority to pass binding authority to Poe & Associates; that Poe & Associates delivered documents to the client on behalf of Northwestern National; that Poe & Associates was intimately involved in communications with the client on Northwestern National's behalf; and that Northwestern National made no effort to communicate any limitation on Poe & Associates' authority to customers. Kirby also contends that the filing with the insurance commissioner reflects the fact that liquor liability coverage was purchased and that the absence of such coverage was in error.

First, "[t]hat the insured was under a duty to examine its policy and ascertain for itself what coverage it had is well settled. The insured was not only free to examine the contract, it was under a duty to do so, and if it had done that it would have observed just what coverage it provided to it. If [the policy] was not what it wished to have it could have renegotiated . . . or . . . returned it as unacceptable and negotiated a contract with another company. . . . If the policy issued was essentially different from the one that the insured desired, the remedy . . . would have been to reject, when tendered, the policy as written. . . . If the applicant neglects to examine the policy delivered to it the contract is binding." (Citation and punctuation omitted.) *Savannah Laundry &c. Co. v. Home Ins. Co.*, 189 Ga. App. 420, 422-423 (2) (376 SE2d 373) (1988); see also *Hartford*, supra.

Despite this rule, Ponytails' failure to read the policy does not

end our inquiry since "the failure of a party to read a contract which is not signed by that party, such as a policy of insurance, does not bar reformation as a matter of law," and parol evidence is admissible to show mistake. *Hearn v. Great Southwest Surplus Lines Ins. Co.*, 193 Ga. App. 31, 32 (386 SE2d 859) (1989). Thus, it is necessary to determine whether Mascho was an agent of Northwestern National.

Four parties were involved in the purchase and sale of the policy. Doug Lambert of Ponytails negotiated the account with Mascho of Poe & Associates. Nancy Smith, also of Poe & Associates, dealt with the Northwestern National general agency, The Lenox Agency, on the account. Steve Pehrson of The Lenox Agency was the person with whom she dealt.

In addition to his affidavit, Mascho's deposition is included in the record. He stated that in placing coverage for Ponytails many companies were contacted. After a company gave him a quote, he had the authority to bind coverage. He stated that in order to obtain a quote, he had to submit information about the risk to the insurer, so that it could then make a determination of whether to authorize coverage. Mascho conceded that he did not have direct contact with Northwestern National or with The Lenox Agency. Mascho stated that Ponytails wanted to purchase liquor liability coverage and that he intended to purchase that coverage for Ponytails. He stated that he assumed that liquor liability coverage was purchased, but he did not read the policy to confirm that impression. He conceded that, despite his affidavit statements, he did not know the legal relationship between Poe & Associates and Northwestern National.

Northwestern National was represented in the contract by its general managing agent, The Lenox Agency. The president of The Lenox Agency, Steve Pehrson, gave a deposition in which he confirmed that he dealt with Nancy Smith of Poe & Associates regarding coverage for Ponytails. Pehrson stated that as a managing general agent, The Lenox Agency had the authority to bind certain risks for certain limits and the authority to collect premiums. He stated that he approved the issuance of coverage for Ponytails and that he communicated this to Smith. He stated that no liquor liability coverage was obtained and that the liquor liability exclusion was part of the policy issued. Pehrson stated that Poe & Associates was not an agent for Northwestern National.

Nancy Smith, a service representative for Poe & Associates, gave a deposition in which she testified that Poe & Associates did not directly represent Northwestern National and that it was necessary for Poe to bind coverage through a general agent, such as The Lenox Agency. She testified that Mascho signed the binder form in this case because he was the producer, or seller, of the insurance. She confirmed that she contacted Pehrson in connection with Ponytails' in-

surance and that Ponytails did not purchase liquor liability coverage.

Doug Lambert, the secretary of Northside Equities, executed the affidavit discussed above, in which he stated that he received a proposal from Poe & Associates which included "Host Liquor Liability" and that he understood that the insurance coverage being written included liquor liability. He stated that Poe & Associates was aware of the fact that 90 percent of the revenue generated at Ponytails was from the sale of alcoholic beverages.[1]

Citing *WMH, Inc. v. Thomas*, 195 Ga. App. 61, 63 (2) (392 SE2d 539) (1990) modified in 260 Ga. 654 (398 SE2d 196) (1990), appellants argue that Mascho was an agent of Northwestern National since he was allowed to bind coverage and his signature was on the binder. See also *Alexander &c. v. Lovett*, 177 Ga. App. 262 (2) (339 SE2d 368) (1985). Mascho's authority to bind coverage was contingent upon approval from the insurer or from an agent. He had no independent authority to contract in the sense contemplated by *WMH, Inc.*, and *Alexander*.

Independent agents or brokers are generally considered the agent of the insured, not the insurer. *European Bakers, Ltd. v. Holman*, 177 Ga. App. 172 (2) (338 SE2d 702) (1985). In the present case, we find that the evidence demanded the conclusion that Mascho was acting as an agent for Ponytails, and not for Northwestern National. According to Mascho's testimony, Ponytails had procured insurance through him for years and kept him as their agent while the agency he worked for changed. Poe & Associates was an independent insurance agency which represented several insurance companies and in finding coverage for Ponytails, Nancy Smith contacted several insurers. Thus, despite Mascho's initial representation that he was an agent of Northwestern National, we find no evidence to that effect.

Moreover, despite appellants' claim to the contrary, we do not accept the argument that Mascho was an apparent agent of Northwestern National. "In order to impose liability pursuant to the doctrine of apparent or ostensible agency, the evidence must show: (1) the apparent principal represented or held out the apparent agent; and (2) justifiable reliance upon the representation led to the injury." *Whitaker v. Zirkle*, 188 Ga. App. 706, 709 (2) (374 SE2d 106) (1988). There is no evidence that Northwestern National or The Lenox Agency held out Mascho as an agent; nor is there evidence that Ponytails justifiably relied upon such a representation. In the absence of both factors, we find this argument without merit.

---

[1] Although the parties refer to the deposition of Lambert, it is not included in the record before us and the trial court apparently did not consider it. "[T]he scope of [our] review is limited to the scope of the ruling in the trial court. . . ." *Robinson v. State*, 208 Ga. App. 528, 530 (4) (430 SE2d 830) (1993).

Similarly, we reject appellants' argument that Mascho and Poe & Associates functioned as both agent for the insured and the insurer. Compare *Byrne v. Reardon*, 196 Ga. App. 735 (4) (397 SE2d 22) (1990).

We find this enumeration without merit.

3. Next, Kirby contends that the trial court erred in holding that Northwestern National is not estopped from denying liquor liability coverage because of its filing with the Insurance Commissioner of Georgia. This enumeration is without merit. The filing was an explanatory memorandum which was filed with the Commission and was not a part of the policy issued to Ponytails. Moreover, we are not convinced that the document filed creates an ambiguity.

*Judgments affirmed. Beasley, P. J., and Johnson, J., concur.*

DECIDED JUNE 16, 1994 —
RECONSIDERATIONS DENIED JUNE 28, 1994 —

*Barnes, Browning, Tanksley & Casurella, Charles B. Tanksley, Roy E. Barnes*, for Kirby.

*Johnston, Brannen & Mikell, Sam L. Brannen, Gary L. Mikell, H. Lehman Franklin, Jr.*, for Northside Equities, Inc.

*Drew, Eckl & Farnham, W. Wray Eckl, James M. Poe, Suzanne V. Sanders*, for Northwestern National Casualty Company.