**NORTH GEORGIA PETROLEUM COMPANY, Plaintiff,**

v.

**FEDERATED MUTUAL INSURANCE COMPANY, Defendant.**

**Civil No. 2:98–CV–146–WCO.**

United States District Court,
N.D. Georgia,
Gainesville Division.

Jan. 22, 1999.

Steven Philip Gilliam, Matthew Tyler Smith, Smith Gilliam & Williams, Gainesville, GA, for plaintiff.

Linda Bridgewater Foster, Weissman Nowack Curry & Wilco, Atlanta, GA, for defendant.

---

**1.** Although North Georgia incorrectly cited Federal Rule of Civil Procedure 14(a), it is

*ORDER*

O'KELLEY, Senior District Judge.

This case is before the court for consideration of defendant Federated Mutual Insurance Company's ("Federated") motion to dismiss [2–1] and plaintiff North Georgia Petroleum Company's ("North Georgia") motion for leave to file an amended complaint [7–1]. After careful consideration and review, the court grants the motions for the reasons stated herein.

### Motion for Leave to File an Amended Complaint

North Georgia moves for leave to file an amended complaint pursuant to Federal Rule of Civil Procedure 15(a) which allows a party to amend a pleading once as a matter of course at any time before a responsive pleading is served.[1] In the instant case, North Georgia filed a complaint in the Superior Court of Hall County, Georgia. Federated filed no defensive pleadings in the Hall County Superior Court but, rather, removed the action to federal district court. Simultaneously with the notice of removal, Federated filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Federated has not filed an answer.

It is well-settled in this circuit that a motion to dismiss is not considered a responsive pleading within the meaning of Rule 15(a). *Fortner v. Thomas*, 983 F.2d 1024 (11th Cir.1993). Thus, under Rule 15(a), North Georgia is entitled to amend its complaint once as a matter of course. Accordingly, North Georgia's motion for leave to file an amended complaint is hereby GRANTED.

### Motion to Dismiss

Federated moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). North Georgia has

clear that North Georgia intends to rely on Rule 15(a).

sued Federated for indemnity based on insurance contracts executed between North Georgia and Federated. North Georgia is a petroleum business, and Federated is an insurance company which provided coverage to North Georgia under commercial package policies and commercial umbrella liability policies. The commercial package policies included commercial general liability (CGL) coverage.

The complaint alleges that in September of 1989, North Georgia installed a petroleum underground storage tank for the Department of Public Safety (DPS), State of Georgia, on DPS property in Hall County, Georgia. As a result of leakage from the storage tank and resulting contamination, the DPS sued North Georgia. After adequate notice, Federated provided a defense for North Georgia but reserved its right to deny coverage and to deny its duty to defend. Subsequently, the parties to the DPS lawsuit settled. Federated agreed to pay the portion of the settlement relating to the actual cost of replacing the underground storage tank but refused to pay the rest.

Before addressing the merits of the motion to dismiss, the court must address North Georgia's assertion in its motion for leave to file an amended complaint that Federated's motion to dismiss is properly considered a motion for summary judgment because North Georgia has presented the Affidavit of William F. Hinderscheid, Jr. to support its opposition to the motion to dismiss.[2] If "matters outside of the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R.Civ.P. 12(b). Pursuant to Rule 12(b), the court expressly excludes the Affidavit of William F. Hinderscheid from consideration in this motion to dismiss. Thus,

Federated's motion to dismiss is not converted into a motion for summary judgment on this ground.

In addition, the court notes that in its reply brief, Federated argues that even if this court should grant the motion to amend the complaint, the complaint, which North Georgia attached to its motion for leave to file an amended complaint, is still deficient as a matter of law. Thus, even though this court granted North Georgia's motion, the motion to dismiss remains ripe for consideration.

Turning to the merits, the court, in considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), must take all well-pleaded facts in the plaintiff's complaint and all reasonable inferences drawn from those facts as true. *Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1485 (11th Cir.1992). "A motion to dismiss is only granted when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Harper v. Blockbuster Entertainment Corp.,* 139 F.3d 1385 (11th Cir.1998) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

In the case sub judice, jurisdiction in federal court is predicated on the diversity of the parties, and Georgia is the forum state. "In diversity cases, the choice-of-law rules of the forum state determine which state's substantive law applies." *Bituminous Casualty Corp. v. Advanced Adhesive Technology, Inc.,* 73 F.3d 335, 337 (11th Cir.1996). "Under Georgia choice-of-law rules, interpretation of insurance contracts is governed by the place of making." *American Family Life Assurance Co. v. United States Fire Co.,* 885 F.2d 826, 830 (11th Cir.1989) (citation omitted). "Insurance contracts are considered made at the place where the contract is delivered." *Id.* Because the insurance contracts in the instant case were deliv-

---

**2.** The court notes that the facts averred to by Mr. Hinderscheid in his affidavit are con-

tained in the amended complaint.

ered in Georgia, Georgia substantive law controls.

Federated asserts that North Georgia has failed to state a claim upon which relief may be granted because the absolute pollution exclusion in the CGL and umbrella policies precludes any claim based on the leakage of petroleum from underground storage tanks. North Georgia counters by arguing that because the insurance contracts are ambiguous, the court must look to the circumstances surrounding the making of the contracts, which indicate that the parties intended that this type of claim be covered in the contract. Even if this court finds that the pollution exclusion is unambiguous and absolute, North Georgia argues that the court should not enforce the exclusion because it is against public policy. The court will address each contention in turn.

A. Interpretation of the Pollution Exclusion

■ With respect to the interpretation of the pollution exclusion, "[A] contract of insurance should follow the cardinal rule of construction so as to carry out the true intention of the parties, and their rights are to be determined by the terms of the contract. Its language should receive a reasonable construction and not be extended beyond what is fairly within its plain terms. Where the language fixing the extent of coverage is unambiguous, ... and but one reasonable construction is possible, this court must enforce the contract as written." *Perkins Hardwood Lumber Co. v. Bituminous Casualty Corp.*, 190 Ga. App. 231, 232, 378 S.E.2d 407 (1989). "The natural, obvious meaning [of a policy provision] is to be preferred over any curious, hidden meaning, which nothing but the exigency of the hard case and the ingenuity of a trained and acute mind would discover." *Truitt Oil & Gas Co., Inc. v. Ranger Ins. Co.*, 231 Ga.App. 89, 90, 498 S.E.2d 572 (1998).

■ However, "[i]f an ambiguity is present, the policy should be construed in favor of the insured and to provide maxi-

mum coverage." *Ryan v. State Farm Mutual Automobile Ins. Co.*, 261 Ga. 869, 872, 413 S.E.2d 705 (1992); *Home Ins. Co. v. Sunrise Carpet Industries, Inc.*, 229 Ga. App. 268, 271, 493 S.E.2d 641 (1997). "Ambiguity in an insurance contract is duplicity, indistinctiveness, or uncertainty of meaning of expression." *Home Ins. Co.*, 229 Ga.App. at 271, 493 S.E.2d 641. "Whenever the phrasing of an insurance policy is so confusing that an average person could not make out the boundaries of the coverage, there is a genuine ambiguity in the policy." *Isdoll v. Scottsdale Ins. Co.*, 219 Ga.App. 516, 518, 466 S.E.2d 48 (1995). "Where the insurer grants coverage to an insured, it must define any exclusions in its policy clearly and distinctly." *Lumbermen's Mutual Casualty Co. v. Plantation Pipeline Co.*, 214 Ga.App. 23, 28–29, 447 S.E.2d 89 (1994); *see also Matjoulis v. Integon General Ins. Corp.*, 226 Ga.App. 459, 459, 486 S.E.2d 684 (1997).

■ Keeping these principles in mind, the court finds that the absolute pollution exclusion is not ambiguous. The pollution exclusion endorsement in question excludes coverage for:

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged, or threatened discharge, dispersal, release or escape of pollutants at any time....

Pollutants means one or more solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

CGL Pollution Exclusion Endorsement. The pollution exclusion in the umbrella policy contains similar language. Because by its terms the umbrella policy applies only if the underlying Federated CGL policy covers North Georgia's claims, the court will focus on coverage under the CGL policy. *See* Umbrella Policy Section 1, Coverage A.

In *Perkins,* 190 Ga.App. at 232, 378 S.E.2d 407, and *American States Ins. Co. v. Zippro Construction Co.,* 216 Ga.App. 499, 501, 455 S.E.2d 133 (1995), the Georgia Court of Appeals interpreted similar language as unambiguous under Georgia law and barring coverage with respect to injuries arising from the discharge of smoke from a wood fire and injury from the release of asbestos fibers as a result of a floor repair. Moreover, in *Damar Inc. v. United States Fire Ins. Co.,* 856 F.Supp. 679 (N.D.Ga.1993), *aff'd,* 21 F.3d 1126 (11th Cir.1994), the district court held that under Georgia law similar language was virtually absolute, affirming that "[i]t is intended to exclude liability coverage for all liabilities arising out of pollution." *Id.* at 682–83.

North Georgia attempts to distinguish *Perkins* and *Zippro.* First, North Georgia asserts that the *Perkins* court focused on the issue of whether "smoke" was deemed to be a pollutant within the terms of the exclusion, which is not applicable to this case. North Georgia's argument is unpersuasive in light of *Truitt Oil,* 231 Ga.App. at 91, 498 S.E.2d 572, in which the court unequivocally held that "[g]asoline which has leaked from its storage container and has contaminated the surrounding environment constitutes a pollutant within the meaning of the policy." *See also Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118 (2d Cir.1990) (holding that pollution exclusion included fuel oil spill); *Guilford Industries Inc. v. Liberty Mutual Ins. Co.,* 688 F.Supp. 792 (D.Me.1988) (ruling that property damage from rupture of oil tanks was within the pollution exclusion), *aff'd,* 879 F.2d 853 (1st Cir.1989). Like the claim in *Truitt Oil,* the insurance claim in the instant case arises from the leakage of underground petroleum storage tanks.

Second, North Georgia distinguishes *Zippro* by asserting that in the instant case an ambiguity arises out of the pollution exclusion's applicability to the products-completed operations coverage. The pollution exclusion endorsement applies by its terms to Section 1, Coverage A of the. CGL policy, which encompasses property damage liability. North Georgia argues that the products-completed operations hazard is a separate coverage from the coverage provided in Section 1, coverage A such that the pollution exclusion does not apply to the products-completed operations hazard. North Georgia asserts that damage to DPS property by leakage from the underground storage tank installed by North Georgia falls within the parameters of the products-completed operations hazard.

North Georgia relies on the insurance declaration page of the CGL policy, which sets out policy limits under the labels "General Aggregate Limit (Other than Products–Completed Operations)" and "Products–Completed Operations." The products–completed operations hazard is defined in the policy as "all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except: (1) Products that are still in your physical possession; or (2) Work that has not yet been completed or abandoned." CGL Policy, Section V.11.a.

Although Georgia courts have not considered the particular question of whether an absolute pollution exclusion applies to coverage under the products-completed operations hazard, other jurisdictions are divided on the issue. *Compare Gregory v. Tennessee Gas Pipeline Co.,* 948 F.2d 203, 208 (5th Cir.1991) (pollution exclusion applies to products-completed operation hazard) and *Crescent Oil Co., Inc. v. Federated Mutual Ins. Co.,* 20 Kan.App.2d 428, 888 P.2d 869, 874 (1995) (products-completed operation hazard does not include hazard of leaking gasoline) *with Kimber Petroleum Corp. v. Travelers Indemnity Co.,* 298 N.J.Super. 286, 689 A.2d 747, 755 (App.Div.1997) (holding that "pollution exclusion clause and completed operations hazards coverage can coexist within the same policy") and *West American Ins. Co. v. Tufco Flooring East, Inc.,* 104 N.C.App. 312, 409 S.E.2d 692, 695 (1991) ("[Pollution

exclusion is] expressly inapplicable to and overridden by the 'completed operations' coverage.").

After careful review of the insurance contract, the court finds that Georgia courts would not find that the declarations page, the coverage clauses, and pollution exclusion create an ambiguity on the pollution exclusion's applicability to the products-completed operations hazard.

In *Gregory*, 948 F.2d at 208, the Fifth Circuit construed a similar insurance contract under Louisiana law and held that the pollution exclusion applied to the product-completed operations hazard. The court reasoned that coverage for products-completed operations hazards was afforded only by the section relating to bodily injury or property damage because several of the exclusions related to that section expressly described how that coverage applied to products-completed operations hazards and the policy contained no separate or express coverage for such hazards. *Id.*

Similarly, the Section 1, Coverage A of North Georgia's policy deals with bodily injury or property damage and at least one of the exclusions in that section explains coverage of the products-completed operations hazard.[3] CGL Policy Section 1, Coverage A, exclusion 1. The policy contains no separate or express coverage for such hazards.

In addition, North Georgia has neglected to point the court to the definition of "Products–Completed Operations Aggregate Limit." The policy states: "The Products–Completed Operations Aggregate Limit is the most we will pay *under Coverage A* for damages because of injury and damage included in the 'products-completed operations hazard.'" CGL Policy, Section III.3 (emphasis added). This language makes it clear that although the "Products–Completed Operations Aggregate Limit" is treated separately on the declaration page, the limit refers to what Federated would pay under Coverage A with respect to the products-completed operations hazard.

■ Because the pollution exclusion applies to Coverage A, which includes the products-completed operations hazard, the court finds that no ambiguity exists as to whether the pollution exclusion applies to the products-completed operations hazard. Thus, the court holds that the pollution exclusion bars North Georgia's claim for indemnity. North Georgia's attempts to circumvent this plain language by allegations of misrepresentation and reliance on Federated's insurance agent by William F. Hinderscheid, Jr. is misplaced. *See Zippro*, 216 Ga.App. at 501, 455 S.E.2d 133 (finding pollution exclusion to be unambiguous and rejecting estoppel theory based on representations by insurance adjuster that insureds were covered).

## B. Public Policy Considerations

North Georgia asserts that even if this court finds that the pollution exclusion is absolute and unambiguous, dismissal is not warranted because the absolute pollution exclusion is against public policy. Specifically, North Georgia asserts that the exclusion dramatically reduces coverage for property damage caused by pollution although approval of the clause by the Georgia Insurance Commissioner was induced by the insurance industry's representation that the clause merely "clarified" the scope of existing coverage.

■ Under Georgia law, an exclusion in an insurance contract is unenforceable because it violates public policy only if the legislature has statutorily mandated that an insurance contract provide that particular coverage. *See Horace Mann Ins. Co. v. Drury*, 213 Ga.App. 321, 445 S.E.2d 272 (1994); *Kirby v. Northwestern National Casualty Co.*, 213 Ga.App. 673, 445 S.E.2d 791 (1994); *Hartford Ins. Co. of the South-*

---

3. The court notes that plaintiff has inadvertently left out page two of the CGL Coverage Form which contains additional exclusions. Neither party has relied on language on that page, and the court has not found it necessary to refer to the additional exclusions.

*east v. Franklin,* 206 Ga.App. 193, 424 S.E.2d 803 (1992); *Hulstzman v. State Farm Fire & Casualty Co.,* 188. Ga.App. 12, 372 S.E.2d 9 (1988). In *Hulstzman,* 188 Ga.App. at 13, 372 S.E.2d 9, the court held that "[i]n those cases where restrictions or limitations have been imposed by the courts on the right of an insurer to define and limit the risk or liability assumed under the terms of a policy, it has been on the basis of mandatory statutory provisions specifying the minimum coverage to be provided." The *Hulstzman* court found that a rental dwelling policy which was issued to the landlord did not provide occupants of the premises with coverage as insureds. *Id.*

The Georgia courts have extended this rationale to an exclusion in a homeowner's policy for an act of an insured that violates any criminal law or statute, *Horace Mann,* 213 Ga.App. at 323, 445 S.E.2d 272, and liquor liability exclusions. *Franklin,* 206 Ga.App. at 194, 424 S.E.2d 803; *Kirby,* 213 Ga.App. at 675, 445 S.E.2d 791. In *Kirby,* the court explained that although the General Assembly imposed liability for the service of alcohol to a noticeably intoxicated person who then injures another, "no law or policy of this State requires insurance coverage for such a liability." *Kirby,* 213 Ga.App. at 675, 445 S.E.2d 791.

 Although no Georgia courts have addressed whether pollution exclusions are against public policy, this court finds that the rationale used in cases considering other exclusions in insurance contracts would be extended by Georgia courts to pollution exclusions. Applying this analysis, the court cannot find that the Georgia Constitution or Code requires coverage for these types of claims, nor have the parties pointed the court to any such provision.

North Georgia relies on *Morton International, Inc. v. General Accident Ins. Co. of America,* 134 N.J. 1, 629 A.2d 831 (1993), for the proposition that courts may refuse to enforce a pollution exclusion because of misrepresentations made by the insurance industry to state authorities regarding the scope of the pollution

exclusion. In *Morton,* the New Jersey Supreme Court found that before the introduction of a new pollution exclusion clause, the insurance industry had represented to the state's insurance regulatory authority that the pollution exclusion would not affect the scope of coverage in insurance policies and would merely clarify existing language. *Id.* 629 A.2d at 847–48. Instead, the new exclusion severely restricted coverage. *Id.*

In constructing the history of the pollution exclusion, the *Morton* court relied in part on *Claussen v. Aetna Casualty & Surety Co.,* 259 Ga. 333, 380 S.E.2d 686 (1989). In *Claussen,* the Georgia Supreme Court held that a pollution exclusion containing a "sudden and accidental" clause was capable of more than one interpretation. In its analysis, the court considered representations made by the insurance industry to the insurance commissioner when the pollution exclusion was first adopted. *Id.* at 337, 380 S.E.2d 686.

A review of Georgia law shows that no Georgia court has addressed the issue presented in *Morton.* Because *Morton* contradicts Georgia case law setting out the guidelines for finding when an exclusion is against public policy, the court holds that Georgia courts likely would not adopt *Morton* to hold a pollution exclusion against public policy. Moreover, even if Georgia courts would adopt *Morton,* this court finds that *Morton* is distinguishable because the *Morton* court construed a pollution exclusion that provided coverage for "sudden and accidental" pollution. The pollution exclusion in the instant case does not contain that exception and is not ambiguous. *See Zippro,* 216 Ga.App. at 501, 455 S.E.2d at 135 (distinguishing pollution exclusion clause containing "sudden and accidental" language). Given the strong policy in Georgia to adhere to the terms of a contract when the language is unambiguous, the court finds that Georgia courts would not apply *Morton* to the absolute pollution exclusion.

*CONCLUSION*

North Georgia's motion for leave to amend the complaint [7–1] is GRANTED. Federated's motion to dismiss [2–1] is also GRANTED.