h SAUNDERS, J.
This case comes before us on appeal where a trial court ruled in favor of plaintiffs-appel-lees, Alberta H. Banks, individually and as tutrix on behalf of her minor children, Kimberly Ann Banks and Tarus Yarnell Banks, (hereinafter “plaintiffs”) against defendant-appellant, a foreign insurer, International Indemnity Company, (hereinafter “International”). The sole contested issue at trial was whether a liability insurance policy issued by International to a Mississippi defendant, Johnny Lishman, d/b/a Foster & Lishman Logging Company, (hereinafter “Lishman”), was in effect on the date of the accident, July 9, 1993. Finding that International was in violation of a Mississippi statute and that International was culpably negligent in _|2Índucing Lishman to rely on the contract, the trial court applied the doctrine of equitable estoppel to prevent International from denying coverage on the basis of what would otherwise be a valid cancellation of the policy. We affirm on different grounds.

PROCEDURAL HISTORY

Plaintiffs brought suit against Lishman, Larry S. Wilson and International. By supplemental and amending petition, plaintiffs added Morris Temple & Company, (hereinafter “Morris”), which is an insurance brokerage company, A.I. Credit Corporation, (hereinafter “AICCO”), and XYZ Insurance Company to the named defendants. Prior to trial, Morris, AICCO and Lishman settled with the plaintiffs and were voluntarily dismissed. Trial proceeded against the remaining defendant, International.

FACTS

On the afternoon of July 9, 1993, at about 4:05 p.m., Robert Earl Banks died as a result of a fatal automobile collision with Larry S. Wilson, an employee of Lishman. Wilson was operating a 1984 GMC pick-up truck, while in the course and scope of his employment for Lishman, when his vehicle made contact with Banks’ 1985 Chevrolet pick-up truck. Banks was in the course and scope of employment for the State of Louisiana, Department of Transportation and Development.
*521 Lishman secured liability insurance from International, contracting for a policy period of July 31, 1992, through July 31, 1993. Lishman financed the policy premium through AICCO which paid the policy out in full. Accordingly, Lishman made payments to AICCO, not International. On January 5, 1993, International issued to Lishman a notice of cancellation, effective February 19, 1993, upon Lishman’s failure to provide underwriting information which International requested. _JsAeting as agent for Lishman, Morris was in charge of handling Lishman’s insurance needs. After receiving the notice of cancellation from International, Lishman received assurance from its agent, Morris, that the insurance policy remained intact. Meanwhile, AICCO received a speed letter on March 16, 1993, from Alexander Underwriters General Agency, Inc. (hereinafter “Alexander”) advising AICCO that Lish-man’s policy had been canceled as of February 19, 1993. The note from Alexander informed AICCO of the amount of refund due and that it would be sent after Alexander’s March close out. On April 15, 1993, fifty-two days after the cancellation date, AICCO received the unearned premium of $7,606.80 from International; on April 19, 1993, AIC-CO mailed a notice to Lishman that the final installment was due on May 1, 1993, which Lishman paid. Meanwhile, Lishman had arranged for other insurance which was to take effect upon notice of expiration of the International policy and secured it with a $5,000.00 deposit. Lishman, not having received the premium refund and believing that International’s policy was still in effect, never engaged the other insurance coverage.
The accident giving rise to the present matter occurred on July 9, 1993. Lishman’s premium refund was not issued by AICCO until July 16, 1993. At all pertinent times, AICCO had in place a policy of returning unearned premiums to an insured within ninety days of receipt of an unearned premium from an insurer.

LAW AND ANALYSIS

I. Cancellation
International first assigns as error the trial court’s determination that International is estopped from asserting cancellation of coverage of its insurance policy as a defense to the plaintiffs lawsuit. The trial court found that the guiding Mississippi statute regulating the actions of International as insurer in this matter is |4MCA § 81-21-21. The lower court reasoned that since International failed to reimburse the unearned premium within the delays prescribed by MCA § 81-21-21, Lishman relied to its detriment on International’s inaction. Accordingly, the lower court found that International must be es-topped from asserting the defense of cancellation.
International argues that the trial court erroneously applied MCA § 81-21-21 instead of MCA § 83-5-28 and that under the latter statute, International did properly cancel the policy. MCA § 81-21-21 provides, in pertinent part, the following:
(1) Whenever a financed insurance contract is canceled, the insurer shall return whatever gross unearned premiums are due under the insurance contract, calculated on the rule of the sum of the digits commonly known as the “Rule of 78ths,” directly to the premium finance company for the account of the insured or insureds as soon as reasonably possible, but in no event later than thirty (30) days after the effective date of cancellation.
MCA § 83-5-28 provides, in pertinent part:
(1) A cancellation, reduction in coverage or nonrenewal of liability insurance coverage, fire insurance coverage or single premium multiperil insurance coverage is not effective as to any coverage issued or renewed after June 30, 1989, unless notice is mailed or delivered to the insured by the insurer not less than (30) thirty days prior to the effective date of such cancellation, reduction or nonrenewal. This section shall not apply to nonpayment of premium.
International argues that since MCA § 81-21-21 falls under the Chapter 21 title “Insurance Premium Finance Companies,” it is appropriately applied to regulate the actions of premium finance companies, not to protect insureds. Additionally, International asserts that MCA § 81-21-21 was not meant to protect an insured or penalize an insurer if the *522 thirty (30) day requirement is not met. Rather, International would apply MCA § 83-5-28, which, it argues, is the proper rule to apply in the matter sub judice where it is the action of an insurer that is sought to be regulated. MCA § 83-5-28 falls under Mississippi’s insurance title and Chapter 5 contains the | ¡¡general provisions relative to insurance and insurance companies. Under MCA § 83-5-28, International is only required to send the notice of cancellation within thirty (30) days in order to effectuate a valid cancellation. This, International did.
We find no error in the lower court’s application of the more specific MCA § 81-21-21 to the present matter where the very issue concerns a delayed reimbursement made by an insurer to a premium finance company. MCA § 81-21-21 regulates an insurer’s behavior when it seeks to cancel a policy and when not only the insured, but also a finance company is also involved. With the advent of a more complicated collection of players in the insurance industry, parties in interest often involve more than simply an insured and its insurer, hence, regulatory statutes like MCA are used to define roles of additional participants. In MCA § 83-5-28 the Mississippi legislature provided that the section would not apply to nonpayment of premiums — it could have done the same in MCA § 81-21-21, yet it did not.
Using similar reasoning, the trial judge perused the legislative history concerning the evolution of MCA § 81-21-21 and found that in one section of the statute, specifically MCA § 81-21-19, the history reveals Subsection 5, not part of the original Section 10 of House Bill No. 859, was added by the committee to the final bill. The new Subsection 5 gave to insurers protection from liability to insureds for any misstatement of fact contained in notice of cancellations or statements furnished by insurance premium finance companies to insurers. However, as the lower court recognized, original Section 11 of House Bill No. 859 when MCA § 81-21-21 emerged unchanged, with no such protection provided to an insurer who fails to return premiums timely.
International argues that MCA § 81-21-21 was meant to regulate the relations between an insurer and a premium finance company. This is precisely what the 16appIication of this statute to the present matter enforces. Such regulations are put in place to govern a continually more complicated insurance industry. The overarching policy that guides legislation regulating insurance practices seeks to protect the interests of those most likely to be harmed by the action or inaction of the insurer — the insured and the insured public. International asserts that the case relied upon by Lishman, Alexander Underwriters General Agency, Inc. v. Lovett, 177 Ga.App. 262, 339 S.E.2d 368 (Ga.App.1985), is inapposite since the statute it relied upon, Georgia Code Section 33-24-44(c), was nothing like MCA § 81-21-21, rather, it dealt solely with the method of cancellation of a policy between an insurer and its insured. We find it ironic that, while International uses this two party relationship to distinguish Lovett from the present matter, it attempts to use the same logic to argue that MCA § 83-5-28 should apply here — that is, that MCA § 83-5-28 instead of § 81-21-21 should be used since the former regulates actions only between an insurer and an insured. International repeatedly argues that if the premium finance company were not involved, then MCA § 81-21-21 could not be used to prevent International from asserting cancellation. Yet the reality that we cannot ignore is that this case does involve the more complex arrangement of an insured who is financed through a premium finance company. Because of this added complexity, the Mississippi legislature saw fit to devise statutes regulating these relations so that insurers, like International, would act in accordance with guidelines that would ensure a timely return of gross premiums “directly to the premium finance company for the account of the insured or insureds....” MCA § 81-21-21(1).
II. Equitable Estoppel
International’s second assignment of error asserts that the trial court erroneously applied the jurisprudential doctrine of equitable estoppel to the facts of Hthe instant case. The lower court applied this doctrine in combination with a negligence analysis to find that Lishman’s detrimental reliance on Inter *523 national’s belated premium refund was a causal factor in it’s not ascertaining other insurance.
International cites many Louisiana cases asserting that equitable estoppel is a doctrine of last resort in this state. Indeed, despite Lishman’s assertions, it is clear that the doctrine is certainly an unfavored one in our courts. Thebner v. Xerox Corp., 480 So.2d 454 (La.App. 3 Cir.1985); Wilkinson v. Wilkinson, 323 So.2d 120 (La.1975). We note, however, that “[although equitable estoppel or estoppel ‘in pais’, is not favored in our law, it will be applied when the evidence warrants it and when the ends of justice demand it.” Porter v. Travelers Indemnity Company, et al, 313 So.2d 641, 643 (La.App. 3 Cir.); writ denied, 318 So.2d 51 (La.1975).
In the present matter, the lower court, after discussing MCA § 81-21-21, unnecessarily continued its analysis under the equitable estoppel doctrine.
In civilian methodology, where a statute has been violated, the failure to follow the statute by failing to make a timely refund negates the cancellation of the policy; in effect, the safeguards implemented by the statute were not complied with, hence no cancellation was effectuated. Considering this, we complete our analysis. Since the policy was not canceled, the policy remains in effect, insurance coverage remains in effect, and there is coverage.
We find the trial court’s discussion of equitable estoppel unnecessary in light of the legislative guidance provided in MCA § 81-21-21; however, finding that MCA § 81-21-21 mandates the same result, we find no legal error in the lower court’s decision.

{^CONCLUSION

On April 15, 1993, International returned the unearned premium of $7,606.80 to AIC-CO, fifty-two days after the February 19, 1993, cancellation date. In this, International failed to properly cancel the policy under MCA § 81-21-21(1).

DECREE

For the above and foregoing reasons, we affirm the judgment of the trial court and find the policy to have remained in effect during the policy period, July 31, 1992, through July 31,1993. Costs are assessed to appellant, International Indemnity Company.
AFFIRMED.
WOODARD, J., dissents.