A04A0903. AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY et al. v. E A TECHNICAL SERVICES, INC.
(608 SE2d 275)

ADAMS, Judge.

Reformation of contract is available where a mutual mistake results in a contract that does not express the intent of the parties. In this case, two related companies intended to apply for several types of coverage from the Kemper Insurance Companies. Two of the three policies Kemper subsequently issued covered both companies, but the commercial automobile insurance policy was issued in the name of only one of the companies. The trial court granted summary judgment in favor of the omitted company, E A Technical Services, Inc. (E A Tech), on its claim that it was entitled to reformation of the policy, and denied Kemper's cross-motion. Kemper appeals.

On appeal from a grant of summary judgment, this Court conducts a de novo review of the record, construing the evidence and all inferences therefrom most favorably to the nonmoving party. *Maddox v. Southern Engineering Co.*, 231 Ga. App. 802, 802-803 (500 SE2d 591) (1998).

The evidence shows that E A Tech and Engineering Associates, Inc. are two related companies in related businesses. They have common ownership, share office space, and have the same mailing address. For the policy year June 1, 2001, through May 31, 2002, the two companies contacted independent insurance agent Hugh Holley, with whom they have had a twenty-year relationship, for the purpose of obtaining quotes — for both companies — for four types of insurance: commercial automobile coverage, workers' compensation coverage, commercial catastrophic loss, and business owners coverage.

The trial court found as a matter of undisputed fact, and E A Tech argues strenuously, that in response to the companies' request, Holley, through his agency Hilb, Rogal & Hamilton of Atlanta, Inc. (HRH), prepared only one standard industry application form for the purpose of obtaining quotes on all the coverage sought. Indeed, only one application is in the record. On that application, in a box marked "First Named Insured & Other Named Insureds," only "Engineering Assoc., Inc." is typed, followed by sufficient space for additional names. In the next box, which is entitled "Mailing Address (of First Named Insured)," the following is typed: "EA Technical Services, Inc., 2625 Cumberland Parkway, Suite 100; Atlanta GA 30339." According to Holley, E A Tech was supposed to be listed in the "Named Insured" box, but as a result of a clerical mistake by his staff, the name was typed in the wrong place.

Eventually, insurance companies doing business as the Kemper Insurance Companies issued three policies (which included all four types of coverage sought): (1) a "Business Automobile Coverage" policy; (2) a "Workers Compensation and Employers Liability Policy"; and (3) a "Premier Business Owners Special Policy." The latter two policies named both E A Tech and Engineering Associates as insured, but the automobile policy omitted E A Tech. HRH later issued several certificates of insurance that stated that E A Tech was covered by all three policies. And Kemper sent a combined invoice for the automobile policy and the business owners policy that was addressed to both companies.

During the policy year, an employee of E A Tech was involved in an automobile accident that resulted in two deaths. Two civil actions were then filed against E A Tech, in April and September 2002 respectively, in which it was alleged that the company should be vicariously liable. Kemper furnished a lawyer to defend E A Tech in the first action without any reservation of rights. On August 29, 2002, prior to the second suit, Kemper denied coverage under the automobile policy because E A Tech was not a named insured under that policy. It continued to provide a defense and $2 million of coverage under the "Commercial Catastrophe Endorsement" of the business owners policy with regard to both suits, the first of which was eventually settled. The effect of the disclaimer reduces the potential coverage from a total of $3 million to $2 million.

E A Tech filed a complaint seeking reformation of the automobile policy to include it as a named insured. The company sought summary judgment, as did Kemper. The trial court granted summary judgment in favor of E A Tech and held that it was entitled to reformation for two reasons. First, the court concluded as a matter of law that Holley was a dual agent and that, therefore, the mistake that

he or his staff made would be considered a mutual mistake, which is grounds for reformation. Second, Kemper ratified Holley's conduct by sending policy invoices jointly to both parties.

1. "A petition for reformation of a written contract will lie where by mistake of the scrivener and by oversight of the parties, the writing does not embody or fully express the real contract of the parties. The cause of the defect is immaterial so long as the mistake is common to both parties to the transaction." (Citations and punctuation omitted.) *Curry v. Curry*, 267 Ga. 66, 67 (1) (473 SE2d 760) (1996). See also *Zaimis v. Sharis*, 275 Ga. 532, 533 (570 SE2d 313) (2002); OCGA § 23-2-31 ("Equity will not reform a written contract unless the mistake is shown to be the mistake of both parties. . . .").

Holley's staff made a clerical error, and there is no question that Holley, as an independent agent, would generally be considered E A Tech's agent. *European Bakers v. Holman*, 177 Ga. App. 172, 173-174 (2) (338 SE2d 702) (1985) ("Independent insurance agents or brokers are generally considered the agent of the insured, not the insurer."). However, this is only a general rule, and sometimes an independent agent can be considered an agent of both the insured and the insurer. Id. at 174; *St. Paul Fire &c. Ins. Co. v. Clark*, 255 Ga. App. 14, 20 (566 SE2d 2) (2002); *Universal Security Ins. Co. v. Lowery*, 195 Ga. App. 621, 622-623 (394 SE2d 416) (1990). See also *Home Materials v. Auto Owners Ins. Co.*, 250 Ga. 599 (300 SE2d 139) (1983) (case tried on stipulation that agent was a dual agent). A mistake made by a dual agent could be attributed to both parties. See generally *Carlton v. Moultrie Banking Co.*, 170 Ga. 185 (3) (152 SE 215) (1930) (knowledge of a dual agent is imputable to both principals). See also *Remediation Svcs. v. Ga.-Pacific Corp.*, 209 Ga. App. 427, 430 (1) (433 SE2d 631) (1993) (dual agency per se is not prohibited).

But regardless of whether Holley was a dual agent, Kemper could be seen as playing a role in the mistake if the facts show that Kemper acted inconsistently in response to only one application. If Kemper received only one application, with E A Tech's name shown in the mailing address box, it responded inconsistently by issuing two policies in the name of both companies and one policy in the name of Engineering Associates alone. Yet Kemper stands by the two policies that cover both companies. In other words, Kemper does not contend that it mistakenly insured both companies on those two policies. It has not sought reformation of those two policies. Accordingly, Kemper admits that it intended to cover both companies on those two policies. If it did so based on only the one flawed application, we would affirm the trial court's decision on the ground that Kemper must have played a role in the mistake that led to the omission of E A Tech on the automobile policy.

But when considering whether summary judgment is appropriate for E A Tech, we perform a de novo review and construe all of the evidence against E A Tech. Furthermore, evidence of a mutual mistake must be clear, unequivocal and decisive. OCGA § 23-2-21 (c); *Ga. Farm &c. Ins. Co. v. Wall*, 242 Ga. 176, 178 (2) (249 SE2d 588) (1978). So construed, the record shows that there is an issue of fact regarding how many applications Holley's staff prepared. Holley's testimony is inconsistent and equivocal on this point, and the application itself suggests that it only covered the automobile policy.

Holley first testified that the application in the record is a generic, industry "primary application," which indicates the "sections attached" or what specific policies are being applied for. He then claimed that it was the only document that was used to apply for all of the policies. But he also testified that a different application is prepared or submitted for each different line of business. And, he testified that there was a separate application for workers' compensation coverage, that there was probably a separate application for the catastrophic loss policy, and that he was not sure whether there was a separate application for property coverage.

Furthermore, although the application found in the record appears to be a general application and it has a box entitled "Indicate Sections Attached," only "Business Auto" is checked. Left blank are 15 other types of insurance, including "Commercial General Liability," "Property," "Workers Compensation," and "Umbrella." Thus, the application itself suggests that it only pertained to the "business auto" coverage that the two companies sought. It could easily be that other applications exist related to the two policies that list both companies as "named insureds."[1]

In short, it may be that Holley's office prepared applications for each policy, and that it listed both E A Tech and Engineering Associates as named insureds on the worker's compensation coverage and business owners coverage applications, but not on the auto policy application. Under this set of facts it would appear that the Kemper automobile policy is consistent with the application: each only lists one named insured — Engineering Associates.

2. Under the facts as construed above, E A Tech would only be entitled to summary judgment if it is undisputed that Holley was a dual agent whose error on the automobile application could be attributable to Kemper. But construed in favor of Kemper, there is an issue of fact concerning the extent of Holley's agency on behalf of Kemper, if any.

---

[1] E A Tech's contention that Kemper admitted in its answer that there was only one application is based on construing that answer in favor of E A Tech, not Kemper.

Several items found in the record show the issue is in dispute. Holley admitted that he is an independent insurance agent and that he does not work for any particular carrier, but for an agency that is appointed by multiple carriers to offer their insurance. Generally, under Georgia law an independent agent is considered the agent of the insured. See *Bowen Tree Surgeons v. Canal Indem. Co.*, 264 Ga. App. 520, 522 (591 SE2d 415) (2003); *European Bakers*, 177 Ga. App. at 173-174 (2). Furthermore, Holley only had authority to bind insurance coverage with a client if the insurer had already issued a quote based upon an application. And the application at issue is a standard industry form that Holley submitted to several carriers; it is not a Kemper document. Indeed, Holley helped the two companies obtain coverage from other carriers in prior years and had offered them a choice of carriers for the year in question. Also, construed in favor of Kemper, Holley had no knowledge of any purported agency agreement between Kemper and HRH. He had never seen any such agreement and was not familiar with its terms, including any authority to bind coverage. Next, although certificates of insurance were issued that stated that E A Tech was covered by all three policies, Kemper did not issue them; Hugh Holley did. And each certificate stated in bold,

> THIS CERTIFICATE IS ISSUED AS A MATTER OF IN-FORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

Moreover, a certificate of insurance, standing alone, is insufficient to authorize a finding that the agency is the agent of the carrier. See *Kinard v. Nat. Indem. Co.*, 225 Ga. App. 176, 179 (1) (483 SE2d 664) (1997) (where there is no evidence of principal holding the person out as its agent). See generally *Howard v. St. Paul Fire &c. Ins. Co.*, 180 Ga. App. 802, 804 (1) (350 SE2d 776) (1986) (proof of agency may not come solely from the agent). Finally, the joint invoices sent to Engineering Associates and E A Tech by Kemper for the auto and business owners policies do not resolve the factual issues present. The business owners policy did cover both companies, and therefore the fact that the invoice was addressed to both parties does not definitively mean that Kemper covered E A Tech on the auto policy.[2]

---

[2] E A Tech's claim that Kemper should have known that it was covering both companies because cars that belonged to, and drivers who worked for, E A Tech were listed on the application, is not persuasive. Holley admitted, and our review shows, that the application did not indicate that certain cars and drivers were associated with E A Tech. Accordingly, this data

To summarize, there is an issue of fact regarding dual agency. That distinguishes this case from *Home Materials*, 250 Ga. 599 (stipulation of dual agency).

These same factual issues also preclude summary judgment based on theories of ratification or estoppel. The fact that the invoices have ambiguous meaning creates an issue of fact regarding whether Kemper ratified Holley's conduct by sending them jointly to Engineering Associates and E A Tech. And as stated above, the effect of the certificates of insurance is in dispute as well. Compare *Alexander Underwriters Gen. Agency v. Lovett*, 177 Ga. App. 262 (339 SE2d 368) (1985) (estoppel based on facts that showed principal placed purported agent in position of apparent authority); *Strain Poultry Farms v. American Southern Ins. Co.*, 128 Ga. App. 600 (197 SE2d 498) (1973) (certificate of insurance issued directly by carrier and attached to policy).

3. With regard to Kemper's motion for summary judgment we must construe the facts in favor of E A Tech. So construed, the facts would show that Kemper issued three policies based on one application. As shown above, that Kemper admits that it intended to issue two of the policies jointly to both companies based on the same application, Kemper is not entitled to summary judgment.

*Judgment reversed. Ruffin, P. J., and Eldridge, J., concur.*

DECIDED NOVEMBER 24, 2004 —
RECONSIDERATION DENIED DECEMBER 14, 2004.

*Luther-Anderson, Daniel J. Ripper*, for appellants.

*Owen, Gleaton, Egan, Jones & Sweeney, Timothy J. Sweeney, Charles J. Cole, James P. Robertson, Jr.*, for appellee.

---

did not inform Kemper of the insureds' intent. For a similar reason, E A Tech's reliance on the fact that Kemper paid an earlier $150 automobile insurance claim arising out of damage caused by an E A Tech employee, is not persuasive. E A Tech admitted that there was nothing to indicate to Kemper that the driver was employed by E A Tech rather than Engineering Associates.