A09A0066. HANDY v. DeKALB MEDICAL CENTER, INC.
(679 SE2d 107)

ADAMS, Judge.

Irene M. Handy sued DeKalb Medical Center, Inc. ("DMC") seeking damages for injuries she received when three alleged DMC employees attempted to take her wheelchair. The trial court directed a verdict for DMC on the grounds that Handy failed to prove agency. Handy assigns error to this ruling, arguing that in light of her testimony, the jury should have been allowed to consider whether she had been injured by DMC's agents. We disagree and affirm.

"A directed verdict is authorized only when there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict." (Citation and punctuation omitted.) *Carden v. Burckhalter*, 214 Ga. App. 487, 488 (1) (b) (448 SE2d 251) (1994). "On appeal, we conduct a de novo review and will uphold the grant of a directed verdict only if all the evidence demands it." (Footnote omitted.) *Withington v. Valuation Group*, 249 Ga. App. 8, 11 (547 SE2d 594) (2001).

So viewed, the evidence, which consisted solely of Handy's testimony, showed that on July 2, 2004, Handy's mother was hospitalized at DMC. Based on a conversation with her mother's doctor, Handy believed that her mother had been cleared for release the previous day. Handy traveled to the hospital and proceeded to her mother's room with a wheelchair that Handy had purchased. Shortly thereafter, a "social worker" entered the room and informed Handy that her mother would not be released into her care. After Handy got "cross," the social worker left the room, made a telephone call, and, according to Handy, "all of a sudden, the three security guards show up."

After the security guards forced Handy to leave the room, she went down to the ground level and complained to "[s]ome woman

who was in an office" about her mother's feeding. One of the guards, whom Handy identified as "Mr. Wilson," was in the room while Handy talked to the unidentified woman. Wilson then took Handy by the shoulder and escorted her out of the hospital.

Handy, who still had her wheelchair, walked from the hospital toward the parking deck. When she reached a stop sign about 100 feet from the entrance, Handy realized that the three security guards were "coming after me." At Wilson's direction, one of the guards tried to take Handy's wheelchair back to the hospital, and after "a tug of war" that lasted for several minutes, Wilson was able to retain possession of her property. As a result, Handy suffered bruises on her arms, soreness in her hands, and a pain in her side that persisted for a month.

After Handy rested her case, the trial court, upon DMC's motion, directed a verdict for DMC for failure to prove agency. The burden of proof rests with the party asserting an agency relationship, and the party's failure to introduce evidence of agency may support a directed verdict. See *Carter v. Kim*, 157 Ga. App. 418, 418-419 (277 SE2d 776) (1981). Here, Handy sought to attribute the security guards' actions to DMC under the theory of respondeat superior, and so Handy had the burden of establishing that the guards were DMC's agents. See *De la Gonzalez v. Krystal Co.*, 173 Ga. App. 574, 575 (3) (327 SE2d 546) (1985). "An agency relationship exists where one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." (Footnote omitted.) *Bouvé & Mohr, LLC v. Banks*, 274 Ga. App. 758, 762-763 (1) (618 SE2d 650) (2005).

Although there is no direct evidence that the guards were DMC's employees or agents, Handy contends that her testimony as to the guards' behavior is sufficient to allow the jury to consider whether they were the employees or agents of DMC. It is true that an agency relationship may be shown by circumstantial evidence. "The fact of agency may be established by proof of circumstances, apparent relations, and the conduct of the parties." (Footnote omitted.) *Southern Exposition Mgmt. Co. v. Genmar Indus.*, 250 Ga. App. 702, 704-705 (551 SE2d 830) (2001). However, there is no evidence that DMC authorized the guards to act on its behalf. The mere presence of the guards on premises also occupied by DMC is insufficient. See *Krystal*, 173 Ga. App. at 576 (3) (where testimony showed only that two security guards "were in the public area of the restaurant, became aware of a disturbance, investigated, and took the man causing the disturbance out of the restaurant," the facts did not tend to show that the guards were employed by the restaurant). It can be reasonably inferred that the guards were initially dispatched by someone, as they appeared immediately after the social worker left

Handy's mother's room to make a telephone call. But the evidence does not show whom the social worker called, or even that the social worker or the unidentified woman in the office with Wilson represented DMC. Nor is DMC's relationship to the hospital facility, as owner, lessee, exclusive occupant, or otherwise, established by the evidence. Thus, although it can be reasonably inferred that the guards were acting under someone's authority and direction, that this entity was DMC is purely a matter of speculation. "If circumstantial evidence raises only a mere conjecture [as to the conclusion sought], there can be no recovery." (Citation and punctuation omitted.) *Dawkins v. Doe*, 263 Ga. App. 737, 740 (1) (589 SE2d 303) (2003). It follows that the trial court did not err in granting a directed verdict to DMC. See *Carter*, 157 Ga. App. at 419. Compare *The Pep Boys &c. v. Yahyapour*, 279 Ga. App. 674, 675 (3) (632 SE2d 385) (2006) (evidence supporting an agency relationship between driver and Pep Boys included that the driver operated a truck owned by Pep Boys; the plaintiff identified the driver as "that Pep Boys driver," and the driver told a police officer that he worked for Pep Boys); *Stouffer Corp. v. Henkel*, 170 Ga. App. 383, 385 (317 SE2d 222) (1984) (where evidence showed that, after he fell, appellee called the hotel desk and reported the incident, and afterward an individual wearing a uniform and a badge appeared at appellee's room and identified himself as a hotel employee, it could be reasonably inferred that the individual was a hotel employee); *Platt v. Olympic Ice*, 168 Ga. App. 299, 300 (308 SE2d 704) (1983) ("the fact that the alleged agent was on the ice with the class and identified herself as the instructor, coupled with the manager's testimony that only employees of appellee were authorized to be instructors, created a reasonable inference that the person who told appellant she couldn't skate past the pylons was in fact an employee of appellee").

*Judgment affirmed. Blackburn, P. J., and Doyle, J., concur.*

DECIDED MAY 21, 2009.

*Rowe, Rowe & Thomas, Anton L. Rowe*, for appellant.
*Hall, Booth, Smith & Slover, Jo A. Jagor*, for appellee.