**THIRD DIVISION**
**MCFADDEN, P. J.,**
**MCMILLIAN and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 9, 2017**

# In the Court of Appeals of Georgia

A16A1851. POPHAM v. LANDMARK AMERICAN INSURANCE    BE-004
       COMPANY, et al.

BETHEL, Judge.

Charles Popham ("Popham") appeals from an order granting summary judgment in favor of defendants Landmark American Insurance Company ("Landmark") and Tapco Underwriters, Inc. ("Tapco") (collectively, the "defendants").[1]

---

[1] Steven Greenberg was originally a party to this case as a defendant. However, during the pendency of this appeal, Popham and Greenberg reached a settlement, and Greenberg was withdrawn as a party. As discussed more fully below, Greenberg's activities, including filings and statements made during the pendency of this litigation, are germane to the issues presented in this appeal. However, due to Greenberg's dismissal prior to the rendering of this decision, we will not address the merits of any of Popham's claims against Greenberg or the propriety of the trial court's rulings on those claims.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56(c). We review a grant of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Ass'n of Savannah, Inc. v. Chatham Cty.*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

So construed, the record shows that Popham contacted independent insurance agent Steven Greenberg ("Greenberg") to obtain a new commercial liability insurance policy for his tree removal business. After contacting several underwriters, Greenberg obtained an insurance quote for Popham from Tapco, an underwriter that had the authority to issue insurance policies on behalf of Landmark. Popham met with Greenberg on November 17, 2010 at which time Popham signed an application for insurance and paid a down payment on the premium to Greenberg. Popham received a certificate of insurance from Greenberg showing a policy effective date of November 17, 2010.

Tapco issued a binder to Popham stating that it would provide temporary insurance coverage until November 29, 2010, provided that Tapco "receive[d] a properly completed application and a premium payment within 12 days." Per the terms of the binder, Popham's failure to remit a completed application and the

2

premium payment to Tapco by that date would nullify and void coverage. The language of the binder also provided that the binder

> "exists on its own terms and expires on its own terms. When a binder expires on its own terms, no coverage exists thereafter. Requirements for notice of cancellation to insureds do not apply to expired binder."

In deposition, both Greenberg and Popham stated that they each understood that the premium payment had to be paid by November 29, 2010.

On November 29, Popham met with Greenberg to make another premium payment, and Greenberg mailed a premium check and Popham's insurance application to Tapco either that day or the following day. However, it is undisputed that Tapco did not receive the premium payment and the application by November 29, 2010.

On December 7, 2010, Tapco notified Greenberg that it had not received the application and premium check for Popham's policy and that the binder was null and void. Two days later, on December 9, 2010, Tapco received Greenberg's mailing containing the application and the premium check and deposited the check that day. The following day, Tapco informed Greenberg that additional application materials were required to issue the insurance policy and that the policy's effective date would

3

be December 9, 2010. Greenberg faxed the additional materials to Tapco, and Tapco, acting on behalf of Landmark, wrote an insurance policy for Popham with an effective date of December 9, 2010.

Meanwhile, on December 1, 2010, Popham was cutting trees with two other men present. One of the other men was seriously injured after a tree fell on him. The injured man brought suit against Popham in late 2011 and won a default judgment against him in early 2012 after Popham failed to respond to the suit. Popham later filed an insurance claim with Landmark, which it denied, stating that no policy was in effect on the date of the accident.

On November 17, 2014, Popham filed suit against the defendants, alleging negligence,[2] breach of contract, and failure to pay an insurance claim in bad faith. Popham also sought punitive damages and attorney fees from the defendants. The trial court granted motions for summary judgment in favor of the defendants with respect to all claims, and this appeal followed.

---

[2] Popham pled counts of negligence against Tapco for failing to inform Popham that his binder had been withdrawn, and against both defendants for failing to insure him. As more fully set forth, *infra*, our only consideration as to those claims is in regard to whether the statute-of-limitations defense was timely raised by Landmark.

In his brief before this Court, Popham enumerates several alleged errors in the trial court's ruling. First, he argues that the trial court erred in ruling that there was no agency relationship formed between Greenberg and Tapco or Greenberg and Landmark. Second, Popham claims the trial court erred in finding that no insurance contract existed between Popham and either Tapco or Landmark at the time of the December 1, 2010, accident. Third, Popham claims that the trial court erred in allowing Landmark to amend its answer to assert a statute-of-limitations defense to his personal injury claims after the trial court's scheduling order deadline. Derivative of those rulings, Popham claims the trial court erred in granting summary judgment on his bad faith claims and his claims for punitive damages and attorney fees.

As Popham has failed to bring forth sufficient evidence to support his claims, we affirm the trial court's grant of summary judgment with regard to each enumeration above. Additionally, we hold that the trial court did not abuse its discretion in permitting Landmark to amend its pleadings to raise a statute-of-limitations defense, as Popham failed to demonstrate prejudice resulting from that decision.

1. As a threshold matter, Popham claims the trial court erred in finding that no agency relationship existed between Greenberg and Tapco or between Greenberg and

Landmark. He argues that Greenberg was acting as an agent for Tapco and/or Landmark, and that therefore genuine issues of fact exist as to whether an insurance contract between Popham and Tapco and/or Landmark was in effect at the time of the December 1, 2010, accident.

The plaintiff has the burden of bringing forth evidence establishing the existence of the agency relationship. *Handy v. DeKalb Med. Ctr., Inc.*, 298 Ga. App. 82, 82 (679 SE2d 107) (2009). Under Georgia law, "[i]ndependent insurance agents or brokers are generally considered the agent of the insured, not the insurer." *European Bakers, Ltd. v. Holman*, 177 Ga. App. 172, 173-74 (2) (338 SE2d 702) (1985) (citation omitted). An independent insurance agent will be considered an agent of the insurer if the plaintiff brings forth evidence that the insurer granted the agent or broker "authority to bind coverage on the insurer's behalf." *Kinard v. Nat'l Indem. Co.*, 225 Ga. App. 176, 178 (1) (483 SE2d 664) (1997) (citations omitted). Alternatively, if an insurer holds out an independent agent as its agent and an insured justifiably relies on such representation, the independent agent will be considered the agent of the insurer. *See Kirby v. Nw. Nat'l Cas. Co.*, 213 Ga. App. 673, 678 (445 SE2d 791) (1994) (citation omitted).

(a) We must first determine if there is an issue of fact as to whether Greenberg was given authority by Tapco and/or Landmark to bind insurance policies on their behalf.

Greenberg indicated in his deposition that he was acting as an agent for Popham in bidding out his request for liability insurance coverage to multiple underwriters, including Tapco. He testified that he was not an agent or employee of Landmark and had no contract with Landmark. Greenberg claimed that he did not have the authority to issue a binder or an insurance policy on behalf of Tapco or Landmark. Both Tapco and Landmark repeatedly denied that Greenberg had ever been their agent.

Despite these statements, Popham argues that other statements by Greenberg and his counsel suggest Greenberg had the authority to bind Tapco. Popham specifically points to statements by Greenberg that he was a "subagent" of Tapco and had "brokerage agreements" with Tapco,[3] as well as a statement by Greenberg's

---

[3] Greenberg stated in his deposition that he has "brokerage agreements" with several insurance companies and that he is "like a subagent." He stated, with respect to Tapco, that the agreement is "an authority to do business with them" and that he is "not an employee of theirs." Rather he is a "contractor" and a "subagent." He went on to testify that he has the authority "to do business with them [presumably, Tapco], but not to do business with the [insurance] companies directly." In his words, "[Tapco chooses] the [insurance] company" by giving Greenberg an insurance quote that "best

7

counsel in open court that Greenberg was an agent of Tapco.[4] Popham contends that

these statements cannot be ignored by the trial court and argues that they are

sufficient to show a triable issue of fact as to whether Greenberg had the authority to

bind Tapco and Landmark.[5] We disagree.

The inquiry here is not whether Greenberg believes himself to be an "agent"

or "subagent" of Tapco or Landmark or how he characterizes his relationship with

those entities. Rather, the inquiry in this case is whether he had actually been granted

_____

fits the risk for the type of insurance that's needed." He also indicated that Tapco gives him the authority to fill out customer applications "and the supplements that they need and the terrorism form."

[4] In the hearing, the judge asked Greenberg's counsel, "So Mr. Greenberg's position is he was acting as the agent for Tapco; is that correct?" Greenberg's counsel replied, "That is correct."

[5] Popham cites this Court's ruling in *Nat'l Prop. Owners Ins. Co. v. Wells*, 166 Ga. App. 281 (304 SE2d 458) (1983) in support of this proposition. However, his reliance on *Wells* is misplaced. In *Wells*, the plaintiff's complaint asserted an agency relationship between an independent insurance agent and an insurer. *Wells*, 166 Ga. App. at 281. The insurer denied the existence of the agency relationship alleged by plaintiff in an affidavit submitted by ones of its officers, but no other evidence regarding an agency relationship was brought forward by the plaintiff or the insurer prior to the insurer's summary judgment motion. *Id.* This Court found that the denial in the affidavit "pierced the plaintiff's pleadings and placed on him the burden of showing the fact of agency." *Id.* at 282. *Wells* thus speaks only to what evidence is sufficient for a *defendant* to support its motion for summary judgment on an agency claim, and, critically, does not purport to establish what evidence is sufficient to satisfy the *plaintiff's* burden of bringing forth evidence to support its claim. *Id.* at 282

the "authority to bind coverage on the insurer's behalf." *Kinard* 225 Ga. App. at 178; *see also Atlanta Mkt. Ctr. Mgmt. Co. v. McLane*, 269 Ga. 604, 606-07 (1)(a) (503 SE2d 278) (1998) (evidence of a relationship between the purported principal and agent is insufficient where there is no evidence of agent's authority to create obligations on behalf of the principal).

Importantly, the label or characterization of the relationship by the purported agent is not sufficient to show what actual authority the agent had been given by the purported principal. *Kirby,* 213 Ga. App. at 677-78; *cf. Jennette v. Nat'l Community Dev. Services, Inc*., 239 Ga. App. 221, 223 (2) (520 SE2d 231) (1999) (noting that labeling the purported agent as an "independent contractor" was not dispositive to agency analysis). In *Kirby*, an employee of an independent insurance agent indicated in an affidavit that he and his company were agents of the insurer. *Kirby*, 213 Ga. App. at 675. This Court ruled that despite the employee's "initial representation that he was an agent of [the insurer]" in his affidavit, there was "no evidence to that effect." *Id.* at 678 (2). *Kirby* thus makes clear that on summary judgment, plaintiff must come forward with evidence that the insurer granted authority to the alleged agent and cannot rely on conclusory statements by the alleged agent.

9

While Popham fixates on the use of the terms "agent" and "subagent" by Greenberg and his counsel, those statements do not speak to any authority on Greenberg's part to bind Tapco or Landmark to an insurance policy, and the defendants unequivocally deny that Greenberg has this authority elsewhere in the record.[6] We thus agree with the trial court that Popham has not brought forward evidence that Greenberg was expressly granted the authority to bind coverage on behalf of Tapco or Landmark.

(b) We must also consider whether Greenberg had the apparent authority to bind Tapco or Landmark. To prove apparent agency, "the evidence must show: (1) the apparent principal represented or held out the apparent agent; and (2) justifiable reliance upon the representation led to the injury." *Kirby*, 213 Ga. App. at 678 (2) (citation omitted).

Here, Landmark stated that it had no contact with Popham or Greenberg throughout the insurance application process. . Moreover, the record is devoid of any

---

[6] Notably, in the same colloquy at the motion hearing, Greenberg's counsel was asked by the court, "[Greenberg] can't bind insurance on behalf of Tapco. He doesn't have that authority?" Greenberg's counsel replied "He sends the insurance policies back to Tapco and then they bind."

evidence that Tapco or Landmark ever held out Greenberg as an agent with the authority to bind them to an insurance contract.

Popham notes that Greenberg provided him with a certificate of insurance showing that he had insurance coverage from Landmark beginning on November 17, 2010, and argues that this implied Greenberg was working on behalf of Tapco or Landmark. However, acts or statements by the alleged agent, with no proof of any act on the part of the alleged principal, are insufficient to create an implied agency relationship. *Am. Mfr. Mut. Ins. Co. v. E A Tech. Serv.*, 270 Ga. App. 883, 887 (608 SE2d 275) (2004); *Howard v. St. Paul Fire & Marine Ins. Co.*, 180 Ga. App. 802, 804 (350 SE2d 776) (1986). As this Court discussed in *Howard*, "where the only evidence that a person is an agent of another party is the mere assumption that such agency existed, or an inference drawn from the actions of that person that he was an agent of another party, such evidence has no probative value and is insufficient to authorize a finding that such an agency exists." *Howard*, 180 Ga. App. at 804 (citations and punctuation omitted). With regard to certificates of insurance specifically, where there is no evidence that the alleged principal has held a person out as its agent, "a certificate of insurance, standing alone, is insufficient to authorize a finding that the agency is the agent of the carrier." *E A Tech. Serv.*, 270 Ga. App. at 887 (2).

11

We thus agree with the trial court that Popham failed to bring forth evidence that Greenberg had the apparent authority to bind Tapco or Landmark to an insurance policy. Having already agreed that Greenberg lacked the actual authority to bind Tapco or Landmark to contracts of insurance, we affirm the trial court's determination that Greenberg was not an agent of Tapco or Landmark.

2. Popham next claims that even if Greenberg did not have the authority to bind Tapco or Landmark, there remains a triable question of fact as to whether an insurance contract between Popham and Tapco or Landmark was formed and later breached. We disagree.

Under Georgia law, an insurance binder is a contract for temporary insurance pending the issuance of a formal insurance policy, and both the binder and any subsequent insurance policy are governed by contract law. *See McDuffie v. Criterion Cas. Co.*, 214 Ga. App. 818, 819-20 (449 SE2d 133) (1994); OCGA § 33-24-33(a). Parties to an insurance contract are "bound by its plain and unambiguous terms,"[7] and "[w]here the contractual language unambiguously governs the factual scenario before the court, the court's job is simply to apply the terms of the contract as written . . . ."

---

[7] *Hays v. Ga. Farm Bureau Mut. Ins. Co.*, 314 Ga. App. 110, 111 (1) (722 SE2d 923) (2012) (citation omitted).

12

*Reed v. Auto-Owners Ins. Co.*, 284 Ga. 286, 287 (2) (667 SE2d 90) (2008) (citation omitted).

Here, the insurance binder clearly stated that coverage under the temporary policy would be deemed null and void if payment of the premium was not received by Tapco by November 29, 2010.[8] Accordingly, interpretation of that provision of the binder was a question of law that was properly ruled upon by the trial court,[9] and the only factual determination regarding such claim was whether such payment was received by Tapco by that date. As it is undisputed that the payment was not received by the deadline, applying the clear terms of the binder, it expired on its own terms, and there was no coverage under it thereafter.[10]

---

[8] We note that binders may, by their "clear and express terms," add to terms of an insurance policy. *See* OCGA § 33-24-33(a). This includes the ability to add conditions precedent to liability on the part of the insurer in the terms of the binder. *See Sw. Life Ins. Co. v. Middle Ga. Neurological Specialists*, 262 Ga. 273, 274-75 (1) (416 SE2d 496) (1992) and *McDuffie*, 214 Ga. App. at 820 ("an insurance company may fix the terms of its . . . binders as it wishes . . . ."). Such conditions precedent may include receipt of required payments by a date certain. *Id*.

[9] *Hays*, 314 Ga. App. at 111.

[10] Popham also asserts that, through application of the "mailbox rule," a jury could find that Greenberg had mailed the payment and application on the day they were due and that, as such, the binder did not lapse. *See* OCGA 13-3-3. We disagree that application of that rule is warranted by this case. Because the binder states that the application and payment were to be received by Tapco by November 29, 2010,

13

When the moving party can demonstrate that there is no genuine issue of material fact "by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims," summary judgment is proper. *Oglethorpe Dev. Group v. Coleman*, 271 Ga. 173, 173 (1) (516 SE2d 531) (1999) (citation omitted). As the undisputed facts show that the binder expired on November 29, 2010, we agree with the trial court's ruling that no contract for insurance was in effect at the time of the accident on December 1, 2010.

3. Popham also claims the trial court abused its discretion by permitting Landmark to amend its answer to raise a statute-of-limitations defense to Popham's personal injury claims after the entry of the pre-trial order.[11] We disagree.

we agree with the trial court that terms plainly and unambiguously set forth the terms under which the binder would be rendered null and void. Thus, no factual issue arises as to what action by the plaintiff was necessary to comply with the terms of the binder. *See Carterosa, Ltd. v. General Star Indem. Co.*, 227 Ga. App. 246, 248-49 (1) (489 SE2d 83) (1997) (citations omitted) (noting that the offeror may specify the method through which the offer must be accepted, including through an "act") and *Rowntree Bros. v. Bush*, 28 Ga. App. 376, 376 (111 SE 217) (1922) (noting resort to "mailbox rule" only when an offer is made "without stating how the acceptance shall be communicated.").

[11] Here, we note that summary judgment was granted to Landmark for certain claims based on the running of the statute of limitations. Popham only argues that the statute-of-limitations defense was not properly raised by Landmark and does not

Here, the trial court entered a scheduling order for the case on March 9, 2015, that provided that the parties' pleadings could be amended until July 11, 2015.[12] Tapco had raised a statute-of-limitations defense in its answer, and while he was still a party to this litigation, Greenberg amended his answer to do so with particularity on August 21, 2015.[13] Landmark filed an amended answer raising the statute-of-limitations defense on December 15, 2015, over two months after it filed its motion for summary judgment.

While a defendant has the right to amend its pleadings to include affirmative defenses at any time before the entry of a pre-trial order, a party must seek leave of the court to do so after the entry of the order. *See* OCGA § 9-11-15(a). In determining whether to grant such a request after the entry of a scheduling order, the trial court has the power to "amend and control its processes and orders, so as to make them

challenge the application of the limitations period.

[12] In its order granting summary judgment, the trial court noted that its March 9, 2015 scheduling order was treated as a pre-trial order.

[13] Greenberg's original answer raised the statute-of-limitations defense only by making reference to "all . . . affirmative defenses set forth in O.C.G.A. § 9-11-8(c)." Plaintiff apparently did not contest the decision of the trial court to permit Greenberg to amend his answer after the deadline stated in the pre-trial order.

15

comformable to law and justice" OCGA § 15-1-3(6), and leave to amend pleadings is to be "freely given when justice so requires." OCGA § 9-11-15(a).

In determining whether leave to amend an answer should be allowed after entry of a pre-trial order, trial courts must balance "possible unfair prejudice to the nonmoving party with the movant's reasons for delay." *Rowe Dev. Corp. v. Akin & Flanders, Inc.*, 240 Ga. App. 766, 769 (3) (525 SE2d 123) (1999) (citation omitted). "Mere delay in seeking leave to amend is not a sufficient reason for denial." *MCG Dev. Corp. v. Bick Realty Co.*, 140 Ga. App. 41, 43 (2) (230 SE2d 26) (1976).

Here, Popham has failed to show how he was prejudiced by the trial court's decision. In *Phillips v. State Farm Mut. Auto. Ins. Co.*, this Court noted that the "purpose of the requirement that affirmative defenses be pleaded is to prevent surprise and to give the opposing party fair notice of what he must meet as a defense." 121 Ga. App. 342, 346 (2)(A) (173 SE2d 723) (1970) (citations omitted). Because both Tapco and Greenberg had raised the statute-of-limitations defense by the time Landmark did so, Popham was on notice that the defense would be considered by the trial court. In addition, Popham's claims against Landmark related to the same general body of facts as its claims against Tapco and Greenberg, and similar evidence would

16

be utilized by Popham to respond to the assertion of the statute-of-limitations defense, regardless of which party raised it.[14]

We fail to see how Popham was prejudiced by the trial court's decision to permit Landmark to raise the defense. While it is clearly desirable for a defendant to raise its affirmative defenses at the earliest possible juncture, Georgia law grants trial judges wide discretion to conduct the business of their courts, including establishing and revising deadlines for pre-trial filings. We thus find no error in the trial court's decision to permit Landmark to raise the statute-of-limitations defense.

4. Popham's remaining enumerations of error regarding claims against Tapco and Landmark for bad faith, punitive damages, and attorney fees are mooted by this Court's rulings, *supra*. As we have upheld the trial court's ruling that neither Tapco nor Landmark had a contract of insurance with Popham in effect on the date of the accident, no bad faith claim can be asserted against either defendant for failure to pay a claim arising from that accident. *See Lavoi Corp., Inc. v. Nat'l Fire Ins. of Hartford*, 293 Ga. App. 142, 146 (1)(b) (666 SE2d 387) (2008); OCGA § 33-4-6(a). Similarly,

---

[14] *See Atlanta Fire Sys., Inc. v. Alexander Underwriters Gen. Agency, Inc.*, 185 Ga. App. 873, 874 (366 SE2d 197) (1988) (objecting party failed to satisfy trial court that it was surprised by late inclusion of a claim and unprepared to defend it on the merits because it had access to documents that were the basis of the late claim throughout the entire pendency of the lawsuit).

awards of punitive damages and attorney fees are derivative of underlying claims, where those claims fail, claims for punitive damages and attorney fees also fail. *See Nelson v. Glynn-Brunswick Hosp. Auth*., 257 Ga. App. 571, 579 (5) (571 SE2d 557) (2004) ("In accordance with OCGA § 51-12-5.1, punitive damages can only be awarded as additional damages.") and *United Cos. Lending Corp. v. Peacock*, 267 Ga. 145, 146 (2) (475 SE2d 601) (1996) ("A prerequisite to any award of attorney fees . . . is the award of . . . relief on the underlying claim"). Because each of Popham's claims against Tapco and Landmark fail as a matter of law, Popham cannot recover punitive damages or attorney fees.

*Judgment affirmed. McFadden, P. J., and McMillian, J., concur*.