**THIRD DIVISION
MCFADDEN, C. J.,
DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 2, 2020**

# In the Court of Appeals of Georgia

A20A0869. AMERICAN RELIABLE INSURANCE COMPANY v. LANCASTER, et al.

HODGES, Judge.

This case arises from a lawsuit filed by Charlie Otis Lancaster and Wanda Kaye Lancaster against American Reliable Insurance Company due to the denial of their claim for the loss of their property in a fire. American Reliable denied the claim on the basis of prior cancellation of the policy due to non-payment of the policy premium. The trial court denied American Reliable's motion for summary judgment, and following this Court's grant of interlocutory review, American Reliable appeals, contending that the trial court erred by (1) failing to find the loss as uncovered because the policy was not in effect at the time of the loss; (2) finding fact issues as

to the actions of a purported agent; and (3) failing to find that the Lancasters' bad faith claim failed as a matter of law. For the following reasons, we reverse.

Georgia law provides that

> [s]ummary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We use a de novo standard of review on appeal from a grant or denial of summary judgment, and view the evidence and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

(Citation and punctuation omitted.) *Meredith v. Thompson*, 312 Ga. App. 697 (719 SE2d 592) (2011).

So viewed, the record demonstrates that in December 2013, the Lancasters went to the Charles Robinson Insurance Agency in Eastman, Georgia, and met with insurance agent Macie Anedra Yawn about purchasing insurance for their residence.[1] They remitted the first policy premium payment to Yawn, and were told by Yawn that they were now insured. That month, American Reliable issued a farm owners insurance policy to Charlie Lancaster for the period from December 20, 2013 to

---

[1] Another insurance agency, Jones, Ewing, Dobbs & Tamplin, is also involved with the procurement of insurance for the Lancasters. This agency's relationship with the Charles Robinson Insurance Agency or Yawn is unclear. The Lancasters were not aware of the involvement of any other agency until 2015.

December 20, 2014 (the "Initial Policy"). Subsequent premium payments for the Initial Policy were always paid by the Lancasters to Yawn rather than American Reliable, as the Initial Policy was an agency bill policy where premium payments could be tendered to the agency.[2] During this Initial Policy period, the Lancasters added coverage for a pole barn on the property and remitted the resulting increased premium to Yawn.

On October 29, 2014, towards the end of the Initial Policy coverage period, American Reliable mailed a renewal notice to the Lancasters which informed the Lancasters of the sum due to renew the policy at the expiration of the current term (the "Renewal Policy"). The renewal notice instructed the Lancasters that, to renew their policy, they needed to pay the premium through a website or by mailing a check to American Reliable. Paying premiums to Yawn or her insurance agency was not listed as a manner by which premiums could be paid. The Lancasters contend that they never received this notice. The Renewal Policy mailed to the Lancasters that was

_____

[2] The Lancasters contend that their version of the Initial Policy was destroyed by fire and American Reliable did not submit a copy in the record. American Reliable does not dispute this characterization or allege that premiums were not properly received for the Initial Policy.

3

set to take effect at the expiration of the Initial Policy period indicated that it was a direct bill policy as opposed to an agency bill policy.

Subsequently, on December 19, 2014, American Reliable mailed a cancellation notice informing the Lancasters that their policy would be terminated if policy premiums were not received by January 4, 2015. The cancellation notice stated that premiums could be paid online, over the phone to a specific toll-free number, or by mailing payment to American Reliable. Again, payment of premiums to Yawn or her insurance agency was not listed as a permissible method of payment. The Lancasters contend that they never received the cancellation notice, but American Reliable produced a certificate of mailing from the United States Postal Service. The Lancasters continued to pay policy premiums directly to Yawn after the expiration of the Initial Policy period, but no premium payments for a policy renewal were received by American Reliable.[3]

On May 30, 2015, the Lancasters suffered a total loss of their residence due to a fire and requested coverage under the Renewal Policy. American Reliable timely received notice of the loss from Yawn, but denied payment due to the fact that

---

[3] The Lancasters contend that they paid what they were told was owed by Yawn, but they admit that what they paid in premiums to Yawn for the Renewal Policy was less than the amount American Reliable claims was due.

4

coverage had been cancelled at the end of the Initial Policy period on December 20, 2014 due to non-payment of premium. The Lancasters sued American Reliable and Yawn. American Reliable timely answered and moved for summary judgment.[4] The trial court denied summary judgment on the basis that genuine issues remained as to the agency status of Yawn, but certified its order for immediate review. This Court granted American Reliable's application for interlocutory review, and this appeal followed.

1. American Reliable argues the trial court erred in finding that a fact issue existed as to Yawn's agency status as to the Renewal Policy.[5] We agree.

The Lancasters contend that after the expiration of the Initial Policy period, they continued making premium payments to Yawn in the amounts claimed due by Yawn. Thus, a threshold question is whether Yawn was an agent of American Reliable for purposes of accepting policy premiums for the Renewal Policy such that American Reliable is bound by Yawn's acceptance of those premium payments.

---

[4] The record contains no answer filed on behalf of Yawn, who appears to be in default, though no motion for default judgment has been filed against her.

[5] "For convenience of discussion, we have taken the enumerated errors out of the order in which appellant has listed them . . ." *Foster v. Morrison*, 177 Ga. App. 250 (1) (339 SE2d 307) (1985).

> The [Lancasters have] the burden of bringing forth evidence establishing the existence of the agency relationship. Under Georgia law, independent insurance agents or brokers are generally considered the agent of the insured, not the insurer. An independent insurance agent will be considered an agent of the insurer if the plaintiff brings forth evidence that the insurer granted the agent or broker authority to bind coverage on the insurer's behalf. Alternatively, if an insurer holds out an independent agent as its agent and an insured justifiably relies on such representation, the independent agent will be considered the agent of the insurer.

(Citations and punctuation omitted.) *Popham v. Landmark American Ins. Co.*, 340 Ga. App. 603, 606 (1) (798 SE2d 257) (2017). We must, then, analyze both actual and apparent agency to determine whether American Reliable is bound by the acceptance of insurance premiums by Yawn.

### a. Actual Agency

During the Initial Policy period, the record demonstrates that, at the very least, a fact issue exists as to whether Yawn was a dual agent for American Reliable and the Lancasters. See, e.g., *American Manufacturers Mut. Ins. Co. v. E A Technical Svcs., Inc.*, 270 Ga. App. 883, 885 (1) (608 SE2d 275) (2004) ("sometimes an independent agent can be considered an agent of both the insured and the insurer"). While there is no evidence that Yawn is an employee of American Reliable, the evidence

6

demonstrates that the Lancasters remitted policy premiums to Yawn which resulted in issuance of the Initial Policy, and that they were permitted to add additional coverage to the Initial Policy by remitting additional premium payments to her. Accordingly, the facts preclude a finding that, as a matter of law, Yawn was not an actual agent of American Reliable for the purpose of accepting policy premiums during the Initial Policy period.

The record also demonstrates, however, that, despite what Yawn may have told the Lancasters, American Reliable rescinded any agency status it previously extended to Yawn to accept policy premiums for the Renewal Policy.

> [W]here the only evidence that a person is an agent of another party is the mere assumption that such an agency exists, or an inference drawn from the actions of the apparent agent indicating that [she] was an agent of another party, such evidence has no probative value and is insufficient to authorize a finding that such an agency exists.

(Citation and punctuation omitted.) *Kinard v. Nat. Indem. Co.*, 225 Ga. App. 176, 179 (1) (483 SE2d 664) (1997); see also *Popham,* 340 Ga. App. at 607 (1) (a) ("Importantly, the label or characterization of the relationship by the purported agent is not sufficient to show what actual authority the agent had been given by the purported principal.").

7

The renewal notice and cancellation notice both indicated that premium payments were to be made directly to American Reliable and make no provision for payment to Yawn. Moreover, the Renewal Policy indicated on its front page that it was a direct bill, rather than agency bill, policy. Accordingly, the record demonstrates that Yawn was not an actual agent of American Reliable for accepting premium payments for the Renewal Policy.

### b. Apparent Agency

An insurance company can be bound by an apparent agent "because the insurer places a purported agent in a position of apparent authority so that a person of ordinary prudence conversant with business usages and the nature of the particular business is justified in assuming that such agent has the authority to perform a particular act and deals with the agent upon that assumption." (Citations omitted.) *Southeastern Express Systems, Inc. v. Southern Guar. Ins. Co. of Georgia*, 224 Ga. App. 697, 700 (482 SE2d 433) (1997). "In order to impose liability pursuant to the doctrine of apparent or ostensible agency, the evidence must show: (1) the apparent principal represented or held out the apparent agent; and (2) justifiable reliance upon the representation led to the injury." (Citation omitted.) *Kirby v. Northwestern Nat. Cas. Co.*, 213 Ga. App. 673, 678 (2) (445 SE2d 791) (1994).

8

Here, for the reasons discussed above, Yawn may have been an apparent agent of American Reliable for the Initial Policy period; however, the Lancasters cannot demonstrate that Yawn was an apparent agent for the purpose of accepting Renewal Policy premiums because they cannot show either that American Reliable held Yawn out as authorized to accept those premiums or that they justifiably relied on their ability to pay premiums to her. As mentioned above, nothing contained in the two letters or the Renewal Policy sent to the Lancasters indicated that premium payments could be paid to Yawn, as they all stated that payment was to be made directly to American Reliable. Even though they deny receiving the cancellation notice, for the reasons discussed in Division 2, the Lancasters are legally presumed to have received the notice. Moreover, in light of the clear indication as to how payment was to be made, the Lancasters were not justified in relying on Yawn's invoices directing that premiums should be paid to her or American Reliable's prior acceptance of premiums remitted through an agency. See, e.g., *Southeastern Express Systems*, 224 Ga. App. at 700 ("However, in the case sub judice, neither the language of the policy nor anything stamped upon the face of the policy gave apparent authority to the independent insurance agent to receive the notice required to be given to the insurer, appellee. Therefore, any notice of the Triad suit given to Dortch, the independent

9

insurance agent who was acting as agent for [the insureds], did not provide constructive notice to [the insurance company]").

These facts are different from cases in which we have found apparent agency, as in those cases the insurer permitted the purported agent to act on its behalf while never informing the insured that the agent had no authority to do so. See, e.g. *Bowen Tree Surgeons, Inc. v. Canal Indem. Co.*, 264 Ga. App. 520, 522 (591 SE2d 415) (2003) ("In this case, . . . the record shows that [the purported agent] customarily accepted premiums and notices of claims on [the insurer's] behalf, and there is no indication that [the insurer] ever voiced any objection to this custom. Accordingly, . . . we must find that, in this case, questions of fact remain regarding [the insurer's] relationship with [the purported agent] and, specifically, the extent of [the purported agent's] ability to accept notice of claims on [the insurer's] behalf as a fiduciary and as a dual agent"). For these reasons, the trial court erred in finding issues of fact exist concerning Yawn's status as an agent of American Reliable for the Renewal Policy.

2. American Reliable contends that the trial court erred in failing to find that the loss was uncovered due to the policy not being in effect at the time of the fire. We agree.

In light of our finding in Division 1 that Yawn was not an agent of American Reliable for the purpose of accepting Renewal Policy premiums, any payments made to her did not constitute payment to American Reliable. Accordingly, the uncontradicted evidence demonstrates that the Lancasters did not make any Renewal Policy premium payments.

Georgia law provides that

[w]hen a policy is canceled for failure of the named insured to discharge when due any of his obligations in connection with the payment of premiums for a policy or any installment of premiums due, whether payable directly to the insurer or indirectly to the agent, or when a policy that has been in effect for less than 60 days is canceled for any reason, the notice requirements of this Code section may be satisfied by delivering or mailing written notice to the named insured and any lienholder, where applicable, at least ten days prior to the effective date of cancellation in lieu of the number of days' notice otherwise required by this Code section.

OCGA § 33-24-44 (d).

Indeed, the [Lancasters'] claim that they did not actually receive the notice of cancellation is irrelevant because proof of actual delivery is not necessary and the notice of delivery was legally effected by the act of mailing and securing the Post Office receipt. Thus, because the mailing receipt stamped by the USPS . . . showed without contradiction that the

11

requisites of OCGA §[] 33-24-44 . . . were satisfied, whether notice of cancellation had in fact been received by the insured is legally irrelevant and is not an issue which would preclude summary judgment.

(Citations and punctuation omitted.) *Burnside v. GEICO Gen. Ins. Co.*, 309 Ga. App. 897, 900-901 (1) (714 SE2d 606) (2011).

In fact, here, no notice from American Reliable was even required as American Reliable did not cancel the Initial Policy; rather, once the Initial Policy expired by its own terms, the Renewal Policy never took effect due to the failure to pay premiums. See OCGA § 33-24-44 (d.1) ("The notice requirements of this Code section shall not apply in any case where a binder or contract of insurance is void ab initio for failure of consideration"); *Progressive Preferred Ins. Co. v. Brown*, 261 Ga. 837, 840 (4) (413 SE2d 430) (1992) ("Despite the parties' intentions, [the insured's] policy was not renewed. . . . Because [the insured] never paid the required renewal premium, his policy expired [at the end of the initial policy period]. No written notice of cancellation or nonrenewal was required. Therefore, [the insured] did not have any coverage with Progressive . . . when [the driver] was involved in the automobile accident.") (citations omitted). Accordingly, the trial court erred in failing to find that the policy was not in effect at the time of the fire loss.

12

3. Lastly, American Reliable contends that the trial court erred in failing to find that the Lancasters' bad faith claim failed as a matter of law. Again, we agree.

Georgia law provides that

[i]n the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer.

OCGA § 33-4-6 (a).

To prevail on a claim for an insurer's bad faith under OCGA § 33-4-6 the insured must prove: (1) that the claim is covered under the policy, (2) that a demand for payment was made against the insurer within 60 days prior to filing suit, and (3) that the insurer's failure to pay was motivated by bad faith. Since the statute imposes a penalty, its requirements are strictly construed. Consequently, a proper demand for payment is essential to recovery.

*Lavoi Corp. v. Nat. Fire Ins. of Hartford*, 293 Ga. App. 142, 146 (1) (b) (666 SE2d 387) (2008). Here, for the reasons discussed in Divisions 1 and 2, the Lancasters failed to establish the threshold showing that their claim was covered under the

13

policy. Thus, the trial court erred in failing to grant summary judgment to American Reliable on the Lancasters' bad faith claim.

*Judgment reversed. McFadden, C. J., and Doyle, P. J., concur*.